| 52 | 417 |
| 53 | 658 |
| 52 | 417 |
| 54 | 74 |
| 52 | 417 |
| 58 | 189 |
| 52 | 417 |
| 61 | 292 |
| 52 | 417 |
| d63 | 187 |
| 52 | 417 |
| 64 | 62 |
| 52 | 417 |
| f65 | 437 |
| 52 | 417 |
| 70 | 248 |
| 70 | 249 |
| 70 | 436 |
| 70 | 551 |
| 70 | 555 |

JOHN H. CONGER v. PATRICK CONVERY.

1. The provision in the act relating to the trial before the county Circuits
   of contested election of county and township officers, is not unconsti-
   tutional.
2. Such trials are conclusive only for the time being, and do not prevent
   a re-trial on *quo warranto*.

In matter of contested election.

The following is the case certified from the Middlesex Cir-
cuit Court:

A petition, of which a copy is hereto annexed, was pre-
sented in the Middlesex county Circuit Court on the 12th
day of November, 1889, by John H. Conger, contestant,
against Patrick Convery, incumbent, duly verified and en-
dorsed by more than fifteen qualified electors of the county
of Middlesex, as required by "An act to regulate elections"
(*Rev.*, p. 337, § 104), which petition is made a part of this
state of the case; whereupon the court appointed December

VOL. XXIII.      27      [417]

3d, 1889, as a suitable time for hearing such complaint, of which due notice was given to the incumbent, pursuant to the statute.

At the time appointed, both parties appeared in person and by counsel. Neither party objecting to the jurisdiction of the court or demanding a trial by jury at that time (nor until the testimony on both sides had been closed), the judge of the Circuit Court proceeded to hear the cause.

Testimony was offered and heard on the part of the contestant to show that, in the First polling precinct of the Sixth ward of the city of New Brunswick, one hundred and seventy-three ballots were deposited in the ballot box voting for John H. Conger for the office of county clerk, whereas the return made by the officers of election was that he received but one hundred votes for said office. That the total majority of the incumbent for said office in the county of Middlesex was sixteen votes, according to the return of the board of county canvassers, and that the difference was sufficient to change the result.

Testimony was also offered and heard on the part of the contestant that the ballots in the ballot box were not all " punched and milled," showing, as was claimed, that a large number of ballots, sufficient to change the result, had not been put in the box regularly, but by fraudulent substitution for other ballots voted for the contestant.

Testimony was also offered and heard on the part of the incumbent to show the imperfect condition of the box and opposing the proofs offered on the part of the contestant.

At the time of the filing of the petition the said Patrick Convery had received his certificate of election, and between the time of presenting said petition and making the order for hearing and the time of said hearing, the term of the former clerk having expired, he was inducted into office, and since that time has acted as clerk of the county of Middlesex and of the Circuit Court.

Both parties having closed their evidence, a day was appointed for hearing the argument of counsel, as well on the

facts as on the question whether the court had jurisdiction under the statute to hear and determine the issues between the contestant and incumbent. At the day and place appointed the parties and their counsel appeared and arguments were made. The court being of the opinion that the question of jurisdiction is one of doubt and difficulty, and preliminary to any decision of the facts in the case, does hereby certify the same to be argued at the bar of the Supreme Court, at the next term thereof, for its advisory opinion, pursuant to the statute, of which the counsel of the contestant shall give notice and cause this certificate to be filed by the clerk of the Supreme Court. The costs to abide the result. The points thus certified are as follows:

1. Can the judge of the Circuit Court proceed further under the statute, decide the question of fact presented by the evidence and pronounce judgment whether the incumbent or contestant was duly elected, and, according to such determination, give or annul the certificate of election?

2. Can the said judge, finding the incumbent to be in the possession of the office of the county clerk, if the judgment be against him and in favor of the contestant, issue an order to carry into effect the judgment of the court, under the seal of the court, commanding the sheriff of the county to put the contestant into possession of the office without delay, and to deliver to him all books, papers and effects belonging to the same?

3. Were the parties respectively entitled to a trial by jury under the statute on demand, and, if so, did they waive said right by failing to demand such trial, thereby enabling the judge to try the cause without jury and within the terms of the statute?

The above case of doubt and difficulty is most respectfully certified to the Supreme Court for its advisory opinion.

E. W. SCUDDER, *Judge.*

New Brunswick, December 31st, 1889.

Argued at the February Term, 1890, before BEASLEY,. CHIEF JUSTICE, and Justices SCUDDER, DIXON and REED..

For the contestant, *Alan H. Strong.*

The questions certified relate to the constitutionality of the statute (*Rev., p.* 355, §§ 100, &c.)

There is no question that the statute has been strictly followed; the answer to each of the questions depends simply upon the validity of the statute.

In *Harris* v. *Vanderveer's Exr.*, 6 *C. E. Gr.* 424, 425, the Court of Errors, speaking by the chief justice, said: "There are two primary principles which are always to be borne in mind in the discussion of every question touching the limitations of the authority of the legislature of the state. The first of these is, that the legislative body is supreme in every respect except in the enumerated instances of constitutional restraints; and next, that such restraints cannot be imposed but by plain language or by implication necessarily springing from the co-ordination of the several parts of the established system of government. It is evident, therefore, that the present motion cannot prevail, unless it be made plain to the mind of the court that some provision of the constitution exists which prevents the assumption by the legislature of the authority to pass the act in question. In the opinion of the legislative and executive branches of the government, this power exists. That opinion is entitled to the utmost respect,. and can, with propriety, be superseded only when this court is convinced beyond a doubt that it is founded in error or misconception.

"The proposition to be considered, therefore, is not whether doubts exist as to the power of the legislature to enact the law in question, but whether it is positively certain that such power has been taken from them."

Such is the attitude of the court upon every question of constitutionality.

Similar legislation has been adopted in very many of the states, and here, as everywhere else, it has been found most beneficial and convenient.

This statute, moreover, has for the last thirteen years been put in force in every Circuit Court in the state, unquestioned until the present case by any judge or counsel.

Only a few of the many cases decided under it have been reported.

The earliest is *Chandler* v. *Wartman*, 6 *N. J. L. J.* 301.

*Burrough* v. *Branning*, 9 *N. J. L. J.* 110, was a contest (under this act) in relation to the clerkship of Camden county, and was decided by Mr. Justice Parker in favor of the contestant, February, 1886, and the incumbent was ousted and contestant put in possession by order of the court.

In the matter of the Register of Essex county (*Haussling* v. *Cogan*, 12 *N. J. L. J.* 271), decided December, 1888, Mr. Justice Depue speaks of the Camden case as a leading case, cited and followed by all the judges, and, in closing, remarks : " I quite agree with Justice Parker that the statute should be liberally construed, but that the construction should not go so far as to confer a special statutory jurisdiction which the legislature does not confer."

In a note to the last case (12 *N. J. L. J.* 279), a contest over the clerkship of Union county, in November, 1887, is referred to.

In Middlesex county the Circuit Court has repeatedly exercised this jurisdiction.

*Ellingham* v. *Mount*, 14 *Vroom* 470, decided in this court in November, 1881, was a contest under this act over an election for constable of Middlesex county. The Circuit Court having decided against the contestant on the merits, an appeal was taken under section 113 of the act, which appeal this court entertained, and affirmed the judgment below.

In *McCoy* v. *Boyle*, 22 *Vroom* 53, the Passaic Circuit Court, in a contest under this statute, had decided that an election had failed, and as a result had annulled the certificate of election of the appellant to the office of alderman of Pater-

son. On appeal, this court (at June Term, 1888) affirmed the judgment of the Circuit.

In this case the question of jurisdiction, as depending on the constitutionality of the act, as far as regards city officers, was raised, and the case is an express authority to the point, that the act confers jurisdiction upon the Circuit Courts in cases of contested elections for city officers.

If this be so, no ground can be suggested for limiting its constitutionality so as to embrace only city officers.

In each of these cases, and in all the other cases that might be gathered from the records of every Circuit Court in the state, the questions now proposed for argument lay at the very root of the controversy, and were assumed or tacitly decided.

In *School Trustees* v. *Stocker*, 13 *Vroom* 115, this court held, that "A proposition assumed or decided by the court to be true, and which must be so assumed or decided, in order to establish another proposition which expresses the conclusion of the court, is as effectually passed upon and settled in that court as the very matter directly decided."

Surely, then, the constitutionality of this statute is no longer open to discussion in this court.

I. But upon the other side is urged the line of decisions holding that the Supreme Court is, by the constitution, exclusively vested with the jurisdiction in *certiorari, mandamus* and *quo warranto*.

The application of this principle to the statute regulating election contests is entirely novel. In none of these cases was any statute even analogous to this involved, and it is plain that there must be some ground upon which these decisions can be reconciled with the constitutionality of this act, for we find the same judges and the same court thus at the same time asserting the inviolability of the jurisdiction of the Supreme Court in the use of its prerogative writs, and also assuming and acting upon this statute (both at the Circuits and in this court) without a suspicion of inconsistency and without, in

either line of cases, referring to the other as in any wise pertinent.

1. An election contest under *Rev., p.* 355, § 100, is, in fact, nothing but a further step in the same process, upon which official title is based, a special statutory jurisdiction engrafted on the election law and a part of it, instituted for the correction of any errors, frauds or irregularities by which a certificate of election may have been wrongfully procured.

It is a mere appeal from the determination of the board of canvassers, and a method of revising or supervising the conduct of the election. Similar legislation was so construed in *Wammack* v. *Holloway*, 2 *Ala. N. S.* 31.

By section 67 of the same act, the board of canvassers are to ascertain and certify (from the returns) who is " duly elected." The determination of the Circuit Court (though based on widely different evidence) is prescribed in the same words. Section 111.

The judgment, if for the contestant, is to annul the certificate of election held by the incumbent and declare the contestant elected, thus merely substituting the judgment of the Circuit Court for the certificate of the board of canvassers as evidence. All this is as plainly within the general police power of the state as is the creation of the board of canvassers.

Section 112 authorizes the Circuit Court to carry its judgment into effect by putting the incumbent out of possession, in case he is already in possession, and the judgment be against him.

This proceeding differs from a *quo warranto* information in its entire purpose and effect, and in a very striking manner.

2. An information *quo warranto* is essentially a public, if not a criminal proceeding.

Blackstone says (3 *Com., p.* *262) that the writ (which is now superseded by the information) is in the nature of a writ of right for the king. And the proceeding by information is subject to the same implied limitation to usurpations on the

prerogatives of the crown.  *Ib.; Chitty's note; Territory* v. *Lockwood,* 3 *Wall.* 236.

In *State, ex rel. Everit,* v. *Roe,* 2 *Dutcher* 215, 217, it is said that the information *quo warranto* " involves a civil right, that of holding an office, and the relator may recover his costs against the defendant or be adjudged to pay costs to him ; but it is in the nature of a criminal proceeding.  It is in the name of the state for an offence alleged to have been committed against the state in the usurpation of some office or franchise, and the offender may not only have judgment of ouster against him, but be fined for his intrusion."

So again, in *Attorney General* v. *Delaware and B. B. R. R. Co.,* 9 *Vroom* 282, 283, this court says : " This information is not in such a sense an action at all.  It is rather an inquisition, which the sovereignty, by its courts, institutes for the purpose of ascertaining whether its prerogative rights have been invaded, to the end that such invasion, if it appears, may be stayed and punished."

And the punishment by fine is by no means a formal or insignificant part of the judgment for the state.  *Bowne* v. *Meehan,* 16 *Vroom* 189, 197 ; *Adams* v. *Haines,* 19 *Id.* 25.

Neither does the intervention of a private relator make it other than a public prosecution.  *People* v. *Hall,* 80 *N. Y.* 117.

Any citizen interested in the discharge of the duties of the office may be a relator, and no claim to the office by a relator is involved or can be considered.  *Richards* v. *Hammer,* 13 *Vroom* 435 ; *State* v. *Gummersall,* 4 *Zab.* 529.

It was this distinguishing feature, as a proceeding on the part of the sovereignty to abate and punish as a public offence a usurpation of an office, that gave to the *quo warranto* writ or information the character of a prerogative remedy (which it has always retained in this state), and it was this which attached this jurisdiction to the King's Bench as the court having in charge, in a peculiar sense, the rights of the crown.

The adjudication of the defendant's title for the benefit of an individual was a merely incidental or perverted use of the

remedy, and its want of adaptation to such use is strikingly apparent in the fact that it could not put the relator into the office, though it might put the defendant out. *State* v. *Gummersall*, 4 *Zab.* 529.

Moreover, it has never been the law that the issue of title to office cannot be tried between private parties, or elsewhere than in the King's Bench. This conclusively appears from the many authorities cited by the chief justice in *Stuhr* v. *Curran*, 15 *Vroom* 281, to the effect that the question may be tried in an action by a claimant to recover the fees of office received by the incumbent, which might be brought in any court having jurisdiction of an action for money had and received.

Such an action, it is presumed, will lie in this state when the ursurpation is consciously wrongful. *Meehan* v. *Freeholders*, 17 *Vroom* 276.

The reason why there could not be an ouster except in *quo warranto*, was simply because it was deemed unwise that a public office should be vacated by any court otherwise than at the suit of the sovereign.

It by no means follows that if the legislature sees fit to give a private remedy for the recovery of an office (a new proceeding without prototype in the common law), it must be in that court which in this state has succeeded to the King's Bench as the depository of the prerogative writs. On the contrary, unless the proceeding is an exertion of sovereignty in vindication of the public right, it has not the character of a prerogative remedy, which is the sole ground of the exclusive jurisdiction of the Supreme Court. It is only upon this ground that the provisions so universal in city charters, making common council the judge of the qualifications of its members, can be sustained. Such offices are within the reach of *quo warranto*. *Bowne* v. *Meehan*, 16 *Vroom* 189. Yet it has always been held that the common council can determine contests in relation thereto, under charter provisions. *State* v. *Rahway*, 4 *Id.* 111 ; *Henry* v. *Camden*, 13 *Id.* 336.

An election contest, under the statute, is strictly a proceeding between the contestant and the incumbent, although to prevent merely frivolous contests an endorsement of the petition by fifteen electors is required.

The state is not a party, and the proceeding is in no sense a public one.

The result of the contest is probably conclusive on the parties (although Judge Parker held the contrary in *Burrough* v. *Branning, ubi supra*).

The state, at all events, cannot be bound, nor is *quo warranto* barred any more than an indictment for an ordinary misdemeanor is barred by the result of a private suit for the same act. The following cases decide the precise point, as applied to *quo warranto* : *Boring* v. *Griffith*, 1 *Heisk.* 456 ; *State* v. *Hardie*, 1 *Ired.* (*N. C.*) *L.* 42; *People* v. *Holden*, 28 *Cal.* 123 : *People* v. *Hall*, 80 *N. Y.* 117, 125, 127 ; *Commonwealth* v. *McCloskey*, 2 *Rawle* 369; *People* v. *Londoner* (*Sup. Ct. Colo., Oct.*, 1889), 22 *Pac. Rep.* 764.

So far as the state is concerned the whole effect is to make the judgment of the Circuit Court for the contestant *prima facie* evidence of title, of the same weight and no more, in *quo warranto*, as the canvassers' certificate was before it was annulled. *Wammack* v. *Holloway*, 2 *Ala. N. S.* 31.

It is a mere shifting of the burthen of proof.

3. Whether the distinction based upon the private nature of the election contest be well founded or not, it follows, from the want of conclusiveness on *quo warranto* of the judgment of the Circuit Court, that the election contest does not trench upon the function of the prerogative remedy in such a way as to impair the jurisdiction of the Supreme Court.

The unconstitutionality is supposed to result, not from any want of capacity in the Circuit Court to receive such a grant of power, but because a concurrent jurisdiction would deprive the Supreme Court of the power to act in those cases of which the Circuit might first acquire cognizance.

It is well settled, however, that such enactments affecting the prerogative writs, as amount merely to regulation of the

remedy, are valid, and in illustration of what legislation may be sustained in that aspect, Mr. Justice Van Syckel, in *Traphagen* v. *West Hoboken*, 10 *Vroom* 232, 236, says: " Nor must it be understood that the legislature may not substitute for the remedy by *certiorari* that of appeal to the Common Pleas from the judgment of a justice of the peace, for in that case this court ultimately supervises the action of the appellate tribunal, and in effect such legislative provision would amount to a mere regulation of the remedy. Cases of this character are therefore not within the constitutional provision."

And again, in *Flanagan* v. *Plainfield*, 15 *Vroom* 118, the same thing is directly decided, and on page 124 the court further says: " This result, however, does not lead to the conclusion that the legislature may not commit to a justice of the Supreme Court the duty of examining assessments for improvements made by commissioners on proceedings to sell lands for taxes, with authority to direct the necessary amendments, for in these instances the proceedings must be reviewed by *certiorari* out of this court to the parties making the assessments or instituting the proceedings for tax sales after they have been perfected."

This reasoning applies as well to *quo warranto* as to *certiorari*, and sustains the position that a participation in the prerogative jurisdiction of the Supreme Court may be, in the first instance, committed to an inferior tribunal, so long as the Supreme Court retains an ultimate supervision of every case passed upon by the inferior court in all respects co-extensive with that which it had at common law.

This is precisely the situation as regards the Circuit jurisdiction in election contests, the judgment being merely *prima facie* evidence (in the place of the canvassers' certificate) upon *quo warranto*.

Even if under section 112 the incumbent is ousted, it is still in the discretion of the court to allow a *quo warranto* against him after the ouster. *Queen* v. *Blizzard, L. R.,* 2 *Q. B.* 55; *Richards* v. *Hammer,* 15 *Vroom* 667.

And a *quo warranto* would of course lie against the contestant after he had thus gained possession.

Moreover, the proceedings in the Circuit may themselves be removed into the Supreme Court by *certiorari*, and continued there under the *quo warranto* jurisdiction in all cases where the *quo warranto* could have issued.

"A *certiorari* lies in civil actions before judgment in the King's Bench in all cases where this court has jurisdiction and can administer the same relief to the parties as the court below." *Tidd Pr.* \*330, *ch.* 17; 2 *Arch. Pr.* \*186; *State, Hoxsey, pros.,* v. *Paterson,* 10 *Vroom* 72, 489, 493; *State* v. *Zabriskie,* 14 *Id.* 369; *Mowery* v. *Camden,* 20 *Id.* 106, 109.

And *certiorari* will issue on application of the state without special cause. *State* v. *Zabriskie, supra.*

By the statute itself, section 113, the judgment rendered in the Circuit may be appealed for error in law to the Supreme Court.

4. The removal of the party against whom judgment is given from possession under section 112, is not the main purpose contemplated by the statute.

The person against whom the petition is exhibited is not necessarily the person holding the office, but only the person declared elected by the canvassers, and either party (if in possession) may be removed in case of an adverse decision.

It is not necessary that such removal should be by *quo warranto.* The possession of an incumbent in such cases is merely provisional, even when acquired before filing the petition.

It is taken under the certificate of the canvassers and subject to the liability to be divested upon the annulment of the certificate by a direct proceeding to contest it under the same act through which the incumbent has acquired it.

It was within the power of the legislature to have provided that the person declared by the canvassers elected should not take the office for a limited time, to allow the presentation of a contesting petition.

It is equally competent for the legislature to declare that the incumbent may take temporary possession under the certificate, on condition that he submit to be deprived of it upon the reversal of the certificate in due course of review.

He accepts his certificate and possession *cum onere*, and assumes his office subject to all parts of the scheme of election and to the methods of revision and correction, both of the certificate and its consequences.

Such a possession is not of that peaceable and established character which requires to be terminated by *quo warranto*, or which was referred to by the chief justice in 22 *Vroom* 311, 315, when he said : " I know of no way in which a person who is colorably and peaceably in possession of a public office can be dispossessed or ousted from it except by the writ of *quo warranto*," &c.

It must be observed, also, that the opinion in the case just cited is to be taken as applied to that case, which had no relation whatever to an election contest. There certain persons who had long been undisputedly in possession of their offices, were sought to be deprived of them under a subsequent statute, and by a proceeding wholly disconnected with their original title. As applied to such a state of facts the language of the chief justice is unexceptionable, but to apply it to the present case would be unwarranted.

5. In the present case, when the petition was filed and the order for hearing made, the incumbent was not in possession of the office. *Quo warranto*, therefore, at that time, could not have issued. *Haines* v. *Freeholders of Camden*, 18 *Vroom* 454.

Nor could the incumbent, by gaining possession *pendente lite*, oust the jurisdiction of the Circuit Court which had already attached.

It would be most anomalous to hold that a jurisdiction, once lawfully acquired, can be put an end to by one party gaining an unlawful possession while the question of right is still in process of trial. It would be permitting a defendant to say to the court, " I care nothing for your decision, which by my own act I can render void."

On the contrary, the true policy and all analogies require that the court should retain the cause to the end, not only to decide, but to give the successful party the same benefit of the decision which he would have had if it had been rendered at the time the proceeding was begun.  *Smith* v. *Crater*, 16 *Stew. Eq.* 636, 641, 642.

6. Even if it should be held that the provision for removing the unsuccessful party from office is unconstitutional, this would not in the least affect the jurisdiction up to that point.

Everything up to and including the judgment is complete in itself, and the contest would fully answer its main purpose, though the power of removal be denied.

If the one hundred and twelfth section be rejected, the successful contestant would be in the same position that he would if the office were filled by a third person.  In such cases the statute makes no attempt to provide for giving possession.

Such, in fact, was this very case at the time of filing the petition.

Against the person then holding the office no order respecting the possession could be made.

The most that can be claimed against us now is, that the contestant is in the same plight, as regards gaining possession, that he would have been if there had been no change of officer *pendente lite*.

The judgment without possession is not nugatory.  It is a conclusive determination as between the parties, upon which an action will lie for fees thereafter received by the incumbent.

It is also available as *prima facie* evidence, taking the place of the canvassers' certificate upon *quo warranto*.

That the statute is severable, see *Rader* v. *Township of Union*, 10 *Vroom* 509, 514; *Van Riper* v. *North Plainfield*, 14 *Id.* 349; *Flanagan* v. *Plainfield*, 15 *Id.* 118; *Evernham* v. *Hulit*, 16 *Id.* 53; *Campbell* v. *Board of Pharmacy*, *Id.* 241; *Herschoff* v. *Beverly*, *Id.* 288, 292; *Dobbins* v. *Northampton*, 21 *Id.* 496, 499.

II. As to the right to jury trial.

1. There is no constitutional right to jury trial in such cases.

They belong, in fact, to that class of investigations in the exercise of the police power in which a jury trial has never been demandable.

The constitution does not extend the right, but merely preserves it where it existed before. *McGear* v. *Woodruff*, 4 *Vroom* 213; *Howe* v. *Plainfield*, 8 *Id.* 145; *Haney* v. *Compton*, 7 *Id.* 507.

If this proceeding does not take the place of *quo warranto* as a prerogative remedy on the part of the sovereignty to abate and punish a public offence, then it is not one wherein a jury could have been had at common law.

2. But the act admits of a jury trial, if seasonably demanded.

The implication, from the language of section 107 (*Rev., p.* 356), is much stronger than in the *Cleveland Case*, 22 *Vroom* 319, 327, where a jury trial was implied from the mere direction to the court to try the issue.

There is certainly no express denial of the right, nor is there any inconsistency in its existence; and if its existence be constitutionally necessary, such construction is to be adopted as will render the act valid.

3. Whether the act does or does not allow of a jury trial, the constitutional right (if it were a right) was waived by failure to demand it until after the testimony was closed. *Cleveland Case*, 22 *Vroom* 319, 327, 328.

When the petition was filed and the order for hearing was made, a *quo warranto* could not have been had, for incumbent was not in office. A jury, therefore, was then, at least, not demandable.

If, upon the incumbent taking the office (which was before the hearing began), there arose an objection to the statutory jurisdiction, as not affording a jury trial, such objection was clearly waived, and the jurisdiction previously existing was

continued by failing to insist upon the constitutional right. and proceeding to trial before the court.

It is just as necessary to insist upon the right where the act. does not provide for its allowance as where it does. Party may consent to unconstitutional law and become bound by its. provisions. *Baker* v. *Braman*, 6 *Hill* 147 ; *Wellington's Case*,. 16 *Pick.* 87 ; *Haskell* v. *New Bedford*, 108 *Mass.* 214 ; *Lee* v. *Tillotson*, 24 *Wend.* 337 ; *Potts* v. *Trenton Water Power Co.*, 1 *Stock.* 592.

The rule, that consent cannot give jurisdiction, does not apply where the defect of jurisdiction is based upon a mere privilege of the parties. *Funck* v. *Smith*, 17 *Vroom* 484 ; *Fraley* v. *Feather*, *Id.* 429.

It follows from all that has been said, that each of the questions certified should be answered in the affirmative.

For the. contestee, *Allan L. McDermott.*

Sections 100–115 of "An act to regulate elections" (*Rev.*,. *p.* 355) purport to confer upon the Circuit Courts of the state jurisdiction to hear and determine all cases in which the election of any county, township or city officer is disputed.. Questions of law and fact are to be decided by the court. The contestant is required to file a petition. The defendant. cannot file anything. He is merely notified that the court. will, on a day certain, proceed to see whether judgment of ouster may be given. If judgment is given against the incumbent, the sheriff may be commanded to put the contestant. in possession of the disputed office. In short, the Circuit Courts are empowered to try the title of office, and carry their judgment into effect.

The defendant protests that this statute is an unconstitutional attempt to deprive him of his right to have his disputed title to the office of county clerk inquired into by the Supreme Court. The functions sought to be conferred by the statute are judicial. The inquiry by the court is called a "trial," and the proceedings therein are to " be similar to those in an, action at law, so far as practicable."

Viewed in the light of the statutory and constitutional provisions for the election of county and municipal officers of New Jersey as they appear to-day, this statute confers upon the Circuit Courts of the state the right to determine the occupant of every elective office in the state, where judicial determination may be made of official title. The governorship and the *personnel* of the legislature are without the jurisdiction of the judiciary; so that I do not state the proposition with unwarrantable breadth in saying that, on the question of official titles, having their origin in popular elections, the statute confers upon the Circuit Courts jurisdiction fully concurrent with that which the common law and the constitution vest in the Supreme Court of the state.

I submit that this is an unwarrantable intrusion upon the powers of the Supreme Court, and that it is inhibited by the letter and spirit of our state constitution.

The proceedings authorized by statute bear all the distinguishing features of the modern use of the writ of *quo warranto*. The object of each is the same—to determine the title to public office. This determination, in a case like the present, may, I submit, be made only by the Supreme Court.

The "information in the nature of a *quo warranto*," as a means of investigating and determining civil rights between parties, may be said to owe its origin to the statute of Anne. *High Extr. Rem., p.* 435; 9 *Anne, ch.* 20, § 4. By this statute, the information could be exhibited in the Courts of Queen's Bench, the Court of Sessions of Counties Palatine, or any of the Courts of Grand Sessions in Wales. The owners of the Counties Palatine were little kings in their way, and, within their counties, had *jura regalia*. The ordinary original writs of process of the King's Courts at Westminster would not run into the principality of Wales or the Counties Palatine. 3 *Cooley Bl. Com.* 77–8. In this fact may be found the reason of the granting of the special jurisdiction by the statute of Anne.

The powers of our Supreme Court, in Provincial days, included the use of the writ of *quo warranto* and jurisdiction

of proceedings commenced by information. At the time of the formation of the constitution, the principal courts, with common law jurisdiction, were the Supreme Court, the Court of Common Pleas, and the county Circuit Courts. In the constitution of 1844, the power of the Circuit Court is defined, and its jurisdiction declared to be of concurrence, in common law, with that of the Supreme Court, save in criminal cases. That the jurisdiction was only constitutionally defined, and not increased, is clearly stated in *State, Dufford* v. *Decue,* 2 *Vroom* 302.

Names of proposed judicial action are nothing. The Supreme Court cannot be deprived of its jurisdiction, or compelled to share it with the Circuit Court, by omitting reference to the writ of *quo warranto* and authorizing a hearing upon which the title to office may be adjudicated. The prerogative writs of this court cannot be deprived of their attributes. One of the prerogatives of the Supreme Court is to inquire into the occupancy of public office. When that inquiry is to be judicial, the Supreme Court should and will jealously guard its right of visitation. *Harris* v. *Vanderveer's Exrs.,* 6 *C. E. Gr.* 427; *Flanagan* v. *Plainfield,* 15 *Vroom* 123; *Green* v. *Jersey City,* 13 *Id.* 122; *Traphagen* v. *West Hoboken,* 10 *Id.* 235; *Jersey City* v. *Lembeck,* 4 *Stew. Eq.* 266.

It is claimed that the judgment of the Circuit Court would not be a bar to *quo warranto* procedure.

Accepting this proposition, laid down in *Burrough* v. *Branning,* 9 *N. J. L. J.* 117, let us look at the possible results. The Circuit Court is empowered by the statute to inquire into and determine the title to public office. The conclusions of fact upon which that court may reach a decision are not subject to the scrutiny of the Supreme Court. Upon questions of law an appeal may be taken. On such appeal the Supreme Court is to pass upon the judgment of the Circuit Court as to whom was " duly elected." Then *quo warranto* proceedings might be instituted in the Supreme Court, and an issue joined upon the facts which the Circuit Court has considered and determined. This issue being tried by the country, and con-

-clusions of fact contrary to those reached by the Circuit Court being arrived at by the jury, what is to prevent the record of ·this court showing that both parties were elected?

If the pendency of this case, or cause, or hearing, or what-·ever it may be called, is not an assumption by the Circuit ·Court, in virtue of the statùte, of the jurisdiction which the Supreme Court exercises through one of its prerogative writs, then the pendency of this proceeding would not be a bar to ·the contemporaneous investigation, in *quo warranto* proceed-·ings, of the title to this office.

The jurisdictional right to inquire into the title of the defendant is exclusively in this court, or is shared by the Circuit ·Courts. If the latter proposition· is maintained, we may have :all manner of confusion, unless this court should, upon appli-·catiôn for leave to file an information, deny that leave because the Circuit Court, on petition, had done all that could be done in *quo warranto* proceedings.` If the contestant in the present ·case should be unsuccessful in the Circuit Court, and the decision there should, on appeal, be affirmed here, he could then .apply for the prerogative writ of this court. The granting ·of that writ being discretionary, will the fact that the Circuit ·Court has acted affect such discretion? If not, and leave to file an information is given, is it not in the line of possibility ·that where this court had under consideration the *quo warranto* proceedings, its judgment affirming the decision of the Circuit Court might be reversed by the Court of Errors and Appeals? It may be answered that this court will so regulate its writs ·as to prevent such complications; but this answer must embrace an admission that the prerogative writs of this court ·may be interfered with by the legislature.

Twist it any way, the basis of the assertion of the writ of ·*quo warranto* as one of the prerogative writs of this court is upon the fact that this court, and this court only, is entitled ·to decide disputed title to public office. In *Hovey* v. *Noble*, 3 *Lawy. Ann. Rep.* 110, the Supreme Court of Indiana says: "As the constitution, of its own vigor and as the sole source ·of the judicial power, vests that power in designated tribunals,

the legislature can neither vest it elsewhere, nor create new judicial offices, nor divide the duties of the judicial offices designated by the constitution." *Zinc Co.* v. *Franklin Iron Co.*, 2 *Stew. Eq.* 430.

If full vigor can be given to the act directing the Circuit Court to find out who is entitled to an office and put him in that office, then that court can do everything that the Supreme Court can do in the premises, except, perhaps, impose a penalty for intrusion. And it would seem that this also may be done, in discretion, for the statute enacts that the Circuit Court may impose the costs upon an incumbent who is made a party to the proceeding only by being told that the contestant asks for adjudication upon his complaint. If this is true, the decision of that court would, if priority attached to it, be of more value than a decision of the Supreme Court. The effect of the exercise of concurrent jurisdiction is considered at length in the case of *Sharon* v. *Terry*, 1 *Lawy. Ann. Rep.* 573. The syllabus of that decision was written by Justice Field, and the sixth proposition laid down is: "Where different courts may entertain jurisdiction of the same subject, the court which first obtains jurisdiction will, with some well recognized exceptions, retain it to the end of the controversy, either to the entire exclusion of the other, or to the exclusion so far as to render the latter's decision subordinate to that of the court first obtaining jurisdiction, and it is immaterial which court renders the first judgment or decree."

If this statute is constitutional, and the construction in *Burrough* v. *Branning* is correct, these contestants can see-saw with the clerkship of Middlesex county for the next five years. This proceeding may be followed by those in *quo warranto*, which in turn may be followed by a petition containing a statement of newly discovered facts which would oust the officer inducted by this court; and so on, limited only by time. If proceedings under the statute are not a bar to *quo warranto* proceedings, then a decision in the latter would not bar proceedings by petition. The statute is not constitutional, nor has it the argument of convenience. Proceedings in *quo-*

*warranto* may now be so speedily adjudicated that if this statute should be upheld it would only prove a stumbling block to early and final adjudication of the right to an office.

*In re Application of Cleveland, Mayor,* 22 *Vroom* 315, application having been made to the chief justice to designate certain municipal officers *pendente lite,* he said : " I know of no way in which a person who is colorably and peaceably in possession of a public office can be dispossessed or ousted from it except by the writ of *quo warranto,* or by some mode of proceeding that is substantially equivalent, and that process is, and always has been, one of the prerogative writs of the Supreme Court, and which, consequently, except as to form, is absolutely beyond legislative control. Nor can the cognizance which the Supreme Court, by means of this procedure, exercises over the title to public office, be imparted by the legislature, either in whole or in part, to an individual or to any other tribunal."

The Cleveland Case was on a petition filed under the provisions of "An act concerning the government of cities of this state," approved April 6th, 1889, and the Supreme Court was called upon to decide the title to certain municipal offices in Jersey City. Passing upon the disputed question of jurisdiction, this court said : " In this procedure we do not find anything that is calculated to deprive these litigants of any substantial right. They are plainly entitled, by force of the system thus contrived, to all the rights and privileges that appertain to the trial of official title by virtue of the writ of *quo warranto.* The jurisdiction in both procedures belongs to the same tribunal ; and if these litigants had been at issue on any matter of fact, and either of them had demanded a trial by jury, such trial would have been directed by the court." 22 *Vroom* 327.

In the present case, the incumbent is deprived, by force of the system contrived, of " all the rights and privileges that appertain to the trial of official title by virtue of the writ of *quo warranto.*"

In *State* v. *Messmore*, 14 *Wis.* 115, Dixon, C. J., comment-
ing upon *State* v. *Foote*, 11 *Id.* 14, says: " The complaint in
that case, as in this, was styled an ' information,' and the
summons here is copied from the one there issued. No
objection was taken to the form of the summons, but the com-
plaint was demurred to principally on the ground that this
court had no jurisdiction over the subject of the action. It
was insisted that section 3 of article VII. of the constitution
only gave this court power to issue the writ of *quo warranto*
at the common law ; that the statutes of 1849 abolished the
common law writ, and substituted the proceeding by informa-
tion ; that the present statute abrogated both the writ and the
information, and declared a civil action to be the only remedy,
and, as it was a mere civil action, it could not be entertained.
We considered that the framers of the constitution looked
rather to the substance than the form ; that their object was,
not so much to give us power to issue a writ of a prescribed
form, as to enable us to hear and determine controversies of a
certain character, and that this jurisdiction could not be taken
away by any legislative changes in the form of the remedy,
but that we might adopt any new process which was calculated
to attain the same end. This was in accordance with the
previous decisions and practice of this court. It had always
taken jurisdiction of the proceeding by information in nature
of a *quo warranto*. The demurrer was therefore overruled,
but without a written opinion."

In cases where the jurisdiction is conferred by the organic
law of a state, it cannot be taken away by legislative enact-
ment or by statutory changes in the form of the remedy.
And where the Supreme Court of a state is vested by the con-
stitution with original jurisdiction in *quo warranto*, it will
continue to exercise the jurisdiction thus conferred, notwith-
standing an act of the state legislature attempting to abolish
both the original writ of *quo warranto* and the proceeding by
information. In such cases the grant of power by the organic
law of the state is regarded, not so much as conferring the
power to issue a writ of a prescribed form, as to enable the

court to hear and determine controversies of a certain character. And the jurisdiction thus conferred cannot be taken away by legislative enactment or change in the form of remedy, although new process may be adopted calculated to attain the same end. *High Extr. Rem.*, § 615, and cases cited.

The fact that the Circuit Courts of the state have frequently exercised jurisdiction under this statute is of little consequence, because the question of constitutional jurisdiction is presented for the first time. An inferior court cannot obtain jurisdiction by acting.

In the argument at Circuit, counsel contended that the statute created a special proceeding "grafted upon the election law." If this view is well taken, jurisdiction of this special proceeding may be conferred, with all the incidents of the statute, including trial, judgment and ouster, upon any court of the state.

The opinion of the court was delivered by

BEASLEY, CHIEF JUSTICE. By the constitution of this state the judicial power is declared to be vested "in a Court of Errors and Appeals in the last resort in all causes, as heretofore; a court for the trial of impeachments; a Court of Chancery; a Prerogative Court; a Supreme Court; Circuit Courts, and such inferior courts as now exist, and as may be hereafter ordained and established by law, which inferior courts the legislature may alter or abolish, as the public good may require."

It will be observed that, in this description, no attempt is made to define the authority or jurisdiction of the several courts thus designated; and yet it is not to be denied that the boundaries of the power thus deposited in these several tribunals have always been deemed to be as plainly demarked, by implication, as they could have been by the most exact definition. And the reason of this is obvious, for each of these judicial institutions, with the exception of the county courts, and those subordinate establishments, styled inferior courts,

has descended to us from the Proprietary and Provincial governments, with no observed change except as to their modes of procedure, and, inasmuch as each of them is the exact counterpart of an English original, the particular jurisdiction of each is readily ascertainable by a reference to that of the tribunal of which it is a copy.    Whenever inquiry has arisen as to the authority of the Court of Chancery as it exists in this state, the books with respect to the jurisdiction of the English chancellor have been questioned; and, similarly, when the sphere of the power of this court has been in doubt, the uncertainty has been thought to have been removed when the extent of the power of the King's Bench, in the given instance, has been ascertained.    In view of such a condition of affairs, it does not seem questionable that every one of these chief constitutional tribunals, as they at present exist in this state, has its powers defined with certainty and exactness.

And from this proposition it necessarily results that establishments thus created cannot be abolished or impaired, except by the power that called them into existence.    A presumption of such inviolability would indeed be justified by a consideration of the nature of the things thus constituted, but, in this case, we have also the express constitutional declaration that all the judicial authority of the state shall be vested in these tribunals that are particularly enumerated, and that the legislature may alter or abolish only those inferior courts that may be erected by its own fiat.    This doctrine, that these important tribunals have their faculties and jurisdictions definitely established, and the further doctrine, that such conditions are immutable except by a modification of the organic law, has been frequently enunciated in the judicial decisions in this state. Such was the view expressed by the court of last resort in the case of *Harris* v. *Vanderveer,* 6 *C. E. Gr.* 424.

Although the foregoing views are familiar, it seemed not out of place to refer to them on the present occasion, as one of the most prominent of the positions taken by the counsel of the contestant is manifestly antagonistic to their existence in a settled form.    The contention referred to is, in effect,

that it is within the competency of the legislature to transfer from the Supreme Court to the county Circuit Court one of its important and well known powers.    The question arises in this wise, viz.: this controversy relates to the election of a clerk in the county of Middlesex; the contestant, by force of that part of the Election law that relates to "contested elections of county and township officers" (*Rev., p.* 355, §§ 100 *et seq.*), filed his petition in the county Circuit Court, setting forth, among other things, "that a large number of ballots, sufficient to change the result, had not been put regularly into the ballot box, but, by fraudulent substitution, for other ballots voted for the contestant."    At the time of the inception of the procedure the incumbent had not received his commission from the governor, but had been counted in by the election board, and was possessed of its certificate to that effect.    The issue thus presented was taken cognizance of by the Circuit judge, many witnesses being called to prove the alleged fraud, and voters were examined touching the candidates for whom they cast their ballots.    At the close of the testimony the proceeding was referred to this court for its advisory opinion upon the following questions, that is to say: " Whether the Circuit Court could proceed further under the statute; decide the question of fact presented by the evidence, and pronounce judgment whether the incumbent or contestant was duly elected, and, according to such determination, give or annul the certificate of election."

By referring to the statute itself, it will be perceived that some of the grounds on which it authorizes elections to be put in question are such as ordinary canvassing boards are frequently called to pass upon, and, with regard to those matters, a number of inquiries have been entertained by several of the Circuit Courts; but, so far as appears, this is the first occasion when, by virtue of this act, an investigation has been made of alleged electoral frauds, or where it has been attempted to ascertain the force of the suffrages by the testimony of the voters.    The procedure was not only without precedent, but it involved questions of the utmost public moment, and, con-

sequently, before carrying it into effect, it was conspicuously proper to call upon this court for its advisement.

The course of law above described is undoubtedly in strict pursuance of the statute on which it was founded. Indeed, the provisions of that act are so general that they appear to be applicable in every instance in which an election can be challenged for illegality, mistake or fraud. In section 111 it directs " that the court shall pronounce judgment whenever the incumbent or any contestant was duly elected, and the person so declared elected will be entitled to his certificate on qualification ; if the judgment be against the incumbent, and he has already received the certificate of election, the judgment shall annul it; if the court find that no person was duly elected, the judgment shall be that the election be set aside."

It is obvious that a procedure having such capacities must, of necessity, embrace everything that is triable on an information in the nature of a *quo warranto,* its judgment, indeed, having a wider effect, as it not only displaces the usurper but installs in his place the rightful candidate. And hence it is insisted that the jurisdiction thus conferred on the several county Circuits is, in substance and effect, a transference to those inferior tribunals of one of the most ancient judicatures which has been immutably fixed in the Supreme Court, and is, therefore, unconstitutional.

For my part, I should entirely agree to this proposition, if I were to assume the truth of the fact on which it is founded. If, in reality, as is here supposed, the power thus imparted to these local judicatories be, in point of effect, identical with that exercised by this court, over the same subject, the law attempting to create such an authority would, in my opinion, be unconstitutional. It cannot be denied that the power in question, as it has always existed in the legal system of this state, is one of those peculiar and high prerogatives that from time immemorial has been possessed by the Court of King's Bench, and, similarly, by this court, from its origin. As long, therefore, as we have seen, as the constitution remains what it is, such power is indestructable and untransferable. That

such jurisdiction is of great moment, in view of the public welfare, is apparent, for, by its prevalence, the right to decide with respect to the tenure of this large class of political offices is put under the safeguard of a trial by jury, supervised by the highest common law court of original jurisdiction in the state. From the very constitution of our courts it has heretofore been a part of the established polity of this commonwealth, that no citizen can be finally excluded or evicted from his office except with the sanction of twelve men and a judgment ensuing according to the methods of the common law. If this court could be deprived, by legislative action, of such a prerogative as this, then it would inevitably follow that not one of its prerogatives would be safe. Nor can this, or any other of the high constitutional courts, be required, by legislative mandate, to share with another tribunal any of their prerogatives, for to convert a court having, in certain matters, exclusive jurisdiction into a court having merely a concurrent jurisdiction, is to essentially alter the inherent nature of such court, and this, we have said, is beyond the scope of the power of the lawmaker.

The general doctrine thus expressed received the sanction of the Court of Errors in *Re Cleveland*, 22 *Vroom* 315.

But upon full consideration, it has been concluded by me, that the fundamental fact thus argumentatively assumed does not exist; that is to say, this act under consideration, when properly construed, does not transfer to the county Circuit Court any part of that prerogative power of this court of which we have been treating. The procedure which it establishes is to be regarded simply as a part of the apparatus for organizing the government, by supplying it temporarily, and in view of a pressing public necessity, with its necessary members. In its purpose and nature it is similar to the power exercised by the judges of election and the county canvassers. It may, in fact, be said to be a supplement to such machinery, the object of it and the other agencies just referred to being the same—that is, to put into office for the time being such candidates as appear to have been chosen by the people.

This construction excludes, of course, the idea that the pro-cedure has any conclusive effect, and regarding it in this light it appears to be, in a constitutional point of view, un-objectionable, at least so far as it is employed merely as an electoral adjunct. Plainly, the judgment rendered in such procedure would not oust this court of its jurisdiction sub-sequently to try the title to the office by *quo warranto*. Indeed, no case has been observed in which it has been declared that a decision of this kind, settling for immediate purposes and as a part of the electoral process with which it was intimately connected, the right to office, is a bar to further judicial in-quiry. The doctrine of the inconclusiveness of such decisions in these cases, is approved of by Judge McCrary in his excel-lent treatise on *Elections*, § 360.

. The statute in question, so far as relates to its application to the present case, must be sustained.

With respect to the further inquiry relating to the right of the parties to call for a trial by jury in these procedures, we are of opinion that such right does not exist. It is not given by the statute in express terms, and it is not to be im-plied, as such mode of proceeding would be out of harmony with the legislative purpose. Looking at the action to be taken in the Circuit as a mere auxiliary to the operation of canvassing the votes, and the result as temporary in its effect, the introduction of a jury into the proceeding would be incon-gruous and obstructive of the purpose, which, in the foregoing remarks, has been imputed to the legislature. It is obvious that, unless this procedure be summary, it would be well-nigh valueless, and all experience has shown that if the trial is to be by a jury it cannot be summary. There appears to be a settled conviction on the part of the community, that the judiciary should participate in investigations of this character. Provision for such intervention in electoral proceedings of this character was recommended by the governor of the state in a recent message, and such recommendation has taken form in a law of great public importance which has just been enacted; and yet, such recommendation and adoption would

seem to be entirely futile unless the judicial assistance thus invoked should be swift and peremptory in its action. In the course of installing an officer recently elected, it would be as well to resort at once to a *quo warranto* as to this statutory method, if it involves a trial by the country.

Touching the further contention that a citizen, being in office, or holding the credentials of his election, has, by force of the constitution of the state, a right to a trial by jury in case his right is put in question, the answer is, that such prerogative does not obtain in the course of proceedings whose purpose is exclusively to put the government on foot. As has already appeared, the course of procedure under consideration was of that character.

Let the Circuit Court be advised to proceed with the matter before it, and to pronounce and execute judgment therein in accordance with the statute.

DIXON, J. I concur in the opinion of the chief justice, to the effect, that the statutory provisions involved in this case cannot, and were not designed to, trench upon the power of the Supreme Court by *quo warranto*, that they are merely a part of the electoral machinery, and, as such, are valid.

But with regard to the trial by jury, my opinion is, that the legislature has given to the parties a right to such a mode of trial. I do not think that the constitution secures that right in controversies like the present, but the manifestation of legislative purpose to afford it seems to me plain.

The statutory jurisdiction is conferred, not upon a judge, but upon the Circuit Courts, and the ordinary method of trying issues of fact in these courts is by jury. Section 107 directs "that the proceedings shall be similar to those in an action at law, so far as practicable," and trial by jury is not at all impracticable in these contests. Indeed, to some of the issues which may be raised under section 101, that mode of trial is peculiarly appropriate.

I think, however, that the parties may, as they may and frequently do in common law actions, waive their right to

trial by jury and proceed to trial before the judge alone, and that such a waiver exists in the present case.

I therefore concur in the advice given to the Circuit.