IN THE

# SUPREME COURT OF JUDICATURE

OF THE

## STATE OF NEW JERSEY.

### FEBRUARY TERM, 1898.

---

### FREEDOM C. LIPPINCOTT v. GEORGE G. FELTON.

1. In a contest under the provisions of the one hundredth and following sections of the Election law, incumbent is not bound to file any answer to contestant's petition, and his failure to do so cannot be treated as a default, entitling contestant to judgment.

2. The power of the Circuit Court, on such a contest, does not extend to the determination whether a vacancy existed in the office in respect to which the contest is made.

3. Ballots cast in one voting precinct having an·official endorsement indicating that they were prepared for another precinct, were properly rejected.

4. Contestant's petition charged that eighteen illegal ballots were cast for incumbent by persons whom he named therein as known to him His proofs established the fact that eighteen ballots were cast illegally but not by whom they were cast or that they were cast by the persons named in his petition. *Held,* that these charges were not thereby sufficiently proved, and in the absence of other grounds in support of the petition, the failure justified its dismissal.

---

Appeal from the determination of the Camden Circuit Court (Miller, J.) in an election contest.

Argued at November Term, 1897, before MAGIE, CHIEF JUSTICE, and Justices DEPUE, GUMMERE and LUDLOW.

For the appellant, *Lindley M. Garrison* and *William J. Kraft.*

For the respondent, *Henry M. Snyder, Jr.,* and *Frederick A. Rex.*

The opinion of the court was delivered by

MAGIE, CHIEF JUSTICE. This is an appeal from the determination of the Camden Circuit in a proceeding contesting an election under the provisions contained in the Election law and found in section 100 and the following sections. *Gen. Stat., p.* 1313.

Four errors in law are claimed by the petition to have occurred in the course of the trial which resulted in the dismissal of the petition of appellant, who was the contestant.

It is first claimed that the Circuit Court should have found in favor of appellant upon his petition and without going into evidence, upon the ground that the incumbent had filed no answer and had not denied the charges contained in the petition.

But the Circuit Court, in these proceedings, is merely a part of the electoral machinery. *Conger* v. *Convery,* 23 *Vroom* 417 ; *S. C.,* 24 *Id.* 658. The act invests it with jurisdiction of a limited character upon the filing of a petition of the sort prescribed. It does not require the incumbent to file an answer. Doubtless he could do so, but in the absence of any requirement to that effect his failure to do so cannot be treated as a default which would entitle contestant to judgment. The contestant must establish the charges of his petition by evidence before the court can make a determination in his favor.

It is next contended that the Circuit Court erred in refusing to determine preliminarily whether or not there was a vacancy in the office in respect to which the contest is made.

It has been settled by the case before cited that the power

conferred on the Circuit Court is limited to a determination, not conclusive, of the result of an election. No power to determine whether a vacancy exists has been expressly conferred, and if such power could be conferred by implication it would inhere in the boards of canvassers, upon the same argument which is here urged. It is incredible that the legislature should have intended to invest the officials charged with the determination of the results of an election with the power to determine whether or not such an election was required by law.

It is further urged that there was error in determining that seventeen ballots cast in the first precinct of the Ninth ward, and which contained contestant's name for the office which he seeks, were properly rejected by the election officers and in refusing to count those ballots for contestant. The rejected ballots contained an official endorsement indicating that they were prepared for another precinct of the same ward.

By the provisions of section 33 of the Ballot Reform law of 1890, each ballot was required to have printed upon its back the words "official ballot for ———," and after the word "for" should follow the designation of the election district or voting precinct for which the ballot was prepared. That section, as finally amended in 1893 (*Gen. Stat., p.* 1360), provides that if an assemblyman is to be chosen at the election, the word "for" shall be followed by the designation of the assembly district, but if no assemblyman is to be chosen, it shall be followed by the designation of the "township, municipality, ward or other subdivision" for which the ballot is prepared. This alteration of the terms of the section as originally passed first occurred in an amendment passed in 1891, and led Mr. Justice Depue, sitting in the Essex Circuit, in a contested election case, to express a doubt whether the law, as altered, required any designation of voting precincts and whether its terms would not be satisfied by a designation of the township or municipality, if not divided into wards, and of the wards and similar subdivisions, if any existed. *Ulrich* v. *Freiensehner*, 15 *N. J. L. J.* 74.

I find it difficult to discover what the word "subdivision" can be practically applied to unless it be to voting precincts. But I deem it unnecessary to express any opinion upon the terms of the section in question as not changed. By section 39 of the Ballot Reform law ( *Gen. Stat., p.* 1338) it is enacted that if any ballot voted shall have on its back any designation other than permitted by the act, whereby it can or may be distinguished from other ballots cast at that election, such ballot shall be void and not counted. If, then, section 33, as now existing, prescribes a designation which does not include voting precincts, the designation on these rejected ballots was not one permitted by the act. If it does prescribe a designation of the voting precinct for which it is prepared, then the endorsement is one permitted by the act, but which plainly could or might distinguish such ballot from other ballots cast at the same election.

For this reason I think there was no error in refusing to count in this contest the ballots which had been rejected by the election officers on these grounds.

A more difficult question is presented by the remaining claim of appellant.

By section 101 of the Election law ( *Gen. Stat., p.* 1313), one of the grounds whereon an election may be contested is the reception of illegal votes at the polls sufficient to change the result.

By section 105 of the same law it is provided that when the reception of illegal votes is alleged as a cause of contest, the petition which the contestant must file must set forth the names of the persons who illegally voted, if known.

The petition in this case set forth the names of the persons alleged to have illegally voted, as known to contestant. But when appellant came to his proof he was unable to prove that the persons named by him had voted at all. All that he proved was that votes had been cast in the name of eighteen registered voters in that precinct; that seventeen of such registered voters did not vote at all and that the remaining

one came in after his name had been voted on and was allowed to vote.

It thus appeared that there were eighteen illegal ballots ,received, but the evidence fell short of showing that they were cast by the persons named in the petition or that they contained the name of respondent for the office for which he and contestant were candidates.

The failure of contestant to prove that the illegal votes which he claimed had been cast for incumbent were cast by the persons who were named in his petition, in my judgment, is fatal to his contest.

The act in question, in prescribing that contestant should set out in his petition the names of those who had cast illegal votes, if they were known to him, and in requiring contestant to serve upon incumbent, ten days before the day fixed for trial, a copy of the petition, had a plain and obvious purpose. The purpose was not only to apprise incumbent of the grounds of the contest, but to enable him to prepare to meet the specific charges by evidence. It might thwart that purpose if, when contestant had specifically averred, as in this case, that one Walter Sherman, not a qualified voter, had voted upon and in the name of Samuel Lutz, who was a qualified voter, he should be permitted to show that some unknown person had impersonated Lutz and voted in his name; for if such proof is admissible and effective, incumbent could not rebut it, even by the production of Sherman to deny that he thus voted.

Counsel strenuously contend that the real contest is over the illegality of the votes cast, and not as to the persons who cast them. But this contention ignores the right of the incumbent to prepare his defence upon the charges required by the statute to be made known to him by the petition served or by such amendment thereof as the Circuit Court may permit.

This view of contestant's case renders it unnecessary to consider whether or not the proof offered by contestant for the purpose of showing that the eighteen illegal votes were

cast for incumbent was relevant and admissible; for, in the absence of proof that those votes were cast by the persons named by, contestant, as known to him, the Circuit Court was right in holding contestant's charges unproved, and there appearing no other sufficient ground of contest, in dismissing his petition.

The judgment must be affirmed.