SOMERSET COUNTY CIRCUIT COURT.

IN THE MATTER OF THE ALLEGED ELECTION OF FREAS L. HESS AS MEMBER OF THE GENERAL ASSEMBLY FOR SOMERSET COUNTY.

Decided December 12, 1941.

For the petitioner *pro se, Anthony P. Kearns.*

For the respondent, *Arthur B. Smith.*

SMITH, JOSEPH L., C. C. J. (Orally.) This comes on a motion of the respondent or as referred to in the statute *R. S.* 19 :29-1; *N. J. S. A.* 19 :29-1, the incumbent, to dismiss the petition filed by Anthony P. Kearns, contesting the election of Freas L. Hess to the General Assembly of New Jersey, from Somerset County, the said petition further praying that the petitioner, Anthony P. Kearns, be declared by this court to be the candidate lawfully entitled to the seat in the Assembly.

Three questions arise under the petition and the motions addressed thereto:

(a) Whether or not this court has jurisdiction to hear and determine the petitioner's contest of the respondent's election;

(b) Assuming such jurisdiction, whether or not, under the facts stated in the petition, admitting them to be true for the purposes of this motion the said Freas L. Hess is

shown to be disqualified to take his seat in the General Assembly, and

(c) If there be a vacancy by reason of such alleged disqualification of Freas L. Hess, whether or not this court can determine the right of the petitioner to take the seat so vacated.

In the order stated these questions will be disposed of.

(a) The jurisdiction of this court.

Article IV, section 4, paragraph 2, of the New Jersey Constitution provides:

"Each House shall be the judge of election returns and qualifications of its own members * * *."

N. J. S. A. 19:29-1 and 2 provide for the contest of the election of any person to any public office by the voters of this state, upon the grounds stated in the aforesaid sections; one of the said grounds being:

"That the incumbent was not eligible to the office at the time of the election."

And still another ground:

"For any other cause which shows that another was the person legally elected."

The said sections also provide, under given circumstances, for a hearing and determination of the said contest by the Circuit Courts of this state, the contest being commenced by the filing of a petition with the Circuit Court clerk, signed by any defeated candidate for a public office. If there ever was any apparent conflict or contradiction between the constitutional provision above referred to, and the statutory provisions, the matter has been judicially determined and settled, it seems to me. Briefly, it has been stated by our courts, that the General Assembly still has the power to "finally judicially determine" the election of a member, and that the power that has been given to the Circuit Court by the statutory provision is merely ministerial in nature and subject to the final determination of the General Assembly, and that the decision of the Circuit Court does not have a conclusive effect. Thus, in *Conger* v. *Convery*, 52 *N. J. L.* 417; 20 *Atl. Rep.* 166, Mr. Chief Justice Beasley stated (at *p.* 443):

"* * * This act under consideration, when properly

construed, does not transfer to the county Circuit Court any part of that prerogative power of this court of which we have been treating. The proceedure which it establishes is to be regarded simply as a part of the apparatus for organizing the government, by supplying it temporarily, and in view of a pressing public necessity, with its necessary members. In its purpose and nature it is similar to the power exercised by the judges of election and the county canvassers. It may, in fact, be said to be a supplement to such machinery, the object of it and the other agencies just referred to being the same—that is, to put into office for the time being such candidates as appear to have been chosen by the people.

"This construction excludes, of course, the idea that the procedure has any conclusive effect, and regarding it in this light it appears to be, in a constitutional point of view, unobjectionable, at least so far as it is employed merely as an electoral adjunct. Plainly, the judgment rendered in such procedure would not oust this court of its jurisdiction subsequently to try the title to the office by *quo warranto*. Indeed, no case has been observed in which it has been declared that a decision of this kind, settling for immediate purposes and as a part of the electoral process with which it was intimately connected, the right to office, is a bar to further judicial inquiry. The doctrine of the inconclusiveness of such decisions in these cases, is approved by Judge McCrary in his excellent treatise on *Elections,* section 360."

This decision was followed by our Supreme Court in *Van Winkle* v. *Caffrey,* 12 *N. J. Mis. R.* 834, in which Winant Van Winkle, petitioner, sought to obtain a writ prohibiting the Circuit Court of Bergen County from proceeding with the petition filed by William H. J. Ely, contesting the election of the said Winant Van Winkle, to the New Jersey Senate from Bergen County.

The same question of jurisdiction was brought up in that case. The court quoted and followed *Conger* v. *Convery, supra,* and said (at *p.* 836):

"It is plain, we think, that the legislature intended, when it enacted article 26 of the act of 1930, that the power to finally determine the election of a senator should remain where it is placed by the constitution. * * *

"The duties of the Circuit Court in carrying out the provisions of article 26 of the act are therefore ministerial, and are employed as an electoral adjunct. No doubt the Circuit Court will so limit its activities. Of course if it should exceed its true powers its action would be subject to review and annulment by the senate, and by appeal as provided for by the act itself, and otherwise."

And again, in *In re Hunt,* 15 *N. J. Mis. R.* 331; 191 *Atl. Rep.* 437, in a well-considered opinion by one of my colleagues, Circuit Court Judge Wilfred H. Jayne, the jurisdiction of the Circuit Court to hear and determine contests in a ministerial capacity, was determined. It follows therefore that this court, in a ministerial capacity, has the jurisdiction to hear and determine this contest of election.

This brings us to the next question, namely, (b) the alleged disqualification of the successful candidate, Freas L. Hess, to take his seat in the General Assembly. The gist of the complaint addressed to the qualifications of the successful candidate, Freas L. Hess, is that the said Freas L. Hess was and is the Mayor of the Borough of Somerville, and therefore, as such, he was and is judge of a court of record and a justice of the peace, and thus is disqualified to hold a seat in the Assembly. Article IV, section 5, paragraph 3 of the New Jersey Constitution provides:

"Persons holding certain offices in state not entitled to seat in legislature; vacation of office upon taking seat; federal officer not entitled to seat.

"No justice of the supreme court, nor judge of any other court, sheriff, justice of the peace, nor any person or persons possessed of any office of profit under the government of this state, shall be entitled to a seat, either in the senate or in the general assembly; but on being elected and taking his seat, his office shall be considered vacant; and no person holding any office of profit under the government of the United States shall be entitled to a seat in either house."

It is important to note the clause in the constitutional provision "on being elected and taking his seat, his office shall be considered vacant." It appears then that one who occupies the office of judge or justice of the peace may be

elected and may take his seat in the Assembly or in the Senate, but that upon taking that seat, his office of judgeship becomes vacant.

Now, this precise point is what was decided by Mr. Chief Justice Brogan, in *Rodgers* v. *Taggart,* 118 *N. J. L.* 542; 194 *Atl. Rep.* 162; *affirmed,* 120 *N. J. L.* 243; 199 *Atl. Rep.* 47. That case was by *quo warranto* proceedings brought in the name of the Attorney-General, by a citizen of Atlantic City, contesting the right of Thomas D. Taggart, Jr., to hold the office of recorder after he had been elected to the state legislature and had taken his seat as a member of the General Assembly. The first question raised in that case was whether or not the constitutional provision above quoted also applied to recorders as judges. Mr. Chief Justice Brogan held that a recorder was a judge, within the meaning of the constitutional provision. On this point the Chief Justice stated (at *p.* 545):

"The respondent argues that the recorder of Atlantic City is a municipal officer and not a judge or justice of the peace within the purview of the constitution. It may well be conceded that a recorder is a municipal officer. *Perry* v. *Bianchi,* 96 *N. J. L.* 113. But the respondent contends (a) that the constitutional inhibition applies only to a judge of the state court, and (b) that the words of the constitution 'judge of any other court' should be held to apply only to judges *eo nomine* and that since the respondent was appointed as 'recorder' and not as 'judge,' he is outside the letter and the meaning of the constitutional interdiction. This second or alternative argument seems to be without merit. We dare say that no one would seriously urge that the Chancellor of the state (prescinding from the provisions of article VII, section 2, paragraph 1 of the Constitution) or any of the Vice-Chancellors of the Court of Chancery might, while occupying their high office, serve as a member of the legislative branch of the government. We therefore perceive no merit in the contention that only judges appointed to office by the designation of 'judge' were intended by the constitution as the class disqualified from participation in the other branches of government."

And further on that point, the court stated (at *p.* 546) :

"A judge may be defined as 'a public officer lawfully appointed to decide litigated questions according to law.' "

Now, after determining that the respondent, Thomas D. Taggart, Jr., was a judge, the court held that by his election to the legislature and by his taking his seat in the General Assembly, he had vacated his office of recorder and a judgment of ouster was rendered. The converse of this rule is also stated at times, namely, that if a person first holds the seat in the Assembly and then becomes elected or appointed a judge, and accepts such election or appointment, he thereby vacates his seat in the Assembly. Thus, in *State* v. *Parkhurst,* 9 *N. J. L.* 427, Mr. Justice Kirkpatrick delivered an opinion in which he stated (at *p.* 438) :

"The fact is, that soon after the establishment of our constitution, considerable doubt arose as to the true construction of this section of that instrument. Some, giving it a short construction, held that it operated only upon those who held offices at the time of their election, and at the time of their taking their seats, and not upon those who were elected to office after they had taken their seats; that it prevented an officer from taking his seat and holding his office at the same time; but that it did not prevent a member from taking an office and holding his seat at the same time. And for this construction they relied principally upon the words of the last clause of the section, viz.: *That on his being elected and taking his seat, his office shall be considered as vacant,* relating as they insisted, altogether to such persons as were in office at the time of their election. But however correct this instruction may be, according to the letter of the section, yet one much more liberal, and much better calculated to *preserve the legislative department from all suspicion of corruption,* ultimately prevailed;" underlined by this court: *"and it was determined, not only that a person actually holding an office of profit, being elected and taking his seat, vacated his office, but also that a person holding a seat, and afterwards being appointed to and accepting an office, should vacate his seat.* And this being once settled has been the uniform construction ever since."

There can be no serious question that the respondent, Hess, as Mayor of the Borough of Somerville, was and is a "judge" under the meaning of the constitutional provision above quoted. The powers given him under *N.*J. S. A*. 40:87-32, 33 and 35, unquestionably bring him under the definition of "judge" as adjudicated by Mr. Chief Justice Brogan in the *Rodgers* v. *Taggart Case, supra*. However, it will be noted that the effect of his election to the assembly and his taking his seat in the Assembly, if and when he does so, would be to vacate his office of judgeship. Of course this statement of the court is *obiter dicta,* because that question is not directly before this court. However, this statement is relevant in the interpretation and application of the constitutional provision. From Mr. Justice Kirkpatrick's statement above quoted, it appears that had the respondent first held the seat in the Assembly and afterwards was appointed to and accepted the office of judgeship, he would vacate his seat in the Assembly. That is not our situation. Under the circumstances presented in this case, the force of the constitutional provision would be to bring about the vacation of his office as judge rather than of his seat in the Assembly.

Thus, the court concludes that the respondent, Freas L. Hess, is not shown, by the facts alleged in the petition, to be disqualified to hold his seat in the Assembly or disqualified to have been elected to that office. Therefore it becomes unnecessary to pass upon the prayer of the petitioner to declare the petitioner as the candidate legally elected to the Assembly from Somerset County.

For the reasons stated, the motion to dismiss the petition filed in this matter, will be granted without costs, and an order will be entered accordingly.

You may submit an order, gentlemen.