PATRICK CONVERY, PLAINTIFF IN ERROR, v. JOHN H. CONGER, DEFENDANT IN ERROR.

On error to the Supreme Court.

For the plaintiff in error, *Robert Adrain* and *Allan L. McDermott.*

For the defendant in error, *Alan H. Strong* and *Abraham V. Schenck.*

PER CURIAM.

Three questions were presented and decided in this case— *first,* whether the statute (*Rev., p.* 355, § 100 *et seq.*) invested the Circuit Court with the jurisdiction it assumed to exercise; *second,* whether the judge of the Circuit Court erred in permitting one Louis Weil to give his opinion, as an expert, upon the question whether certain ballot box machines made the marks which appeared upon ballots produced in court; and, *third,* whether the judge erred in directing that the ballot boxes and ballots, which were called for by the petitioner and examined and testified about in the case, should be considered as in evidence upon the part of the petitioner.

The first of these questions, upon a case certified from the Circuit Court, after testimony upon the trial had been closed, was decided by the Supreme Court in the affirmative (23 *Vroom* 417), and the second and third questions were decided by the same court, upon error assigned on exceptions taken in the Circuit, in the negative (*ante, p.* 468), the Chief Justice dissenting.

The majority vote in this court upon each question is induced by the reasons stated in the opinions of the Chief Justice in the Supreme Court.

THE CHANCELLOR (dissenting).    I feel constrained to shortly state my reasons for dissenting from the conclusion of

the majority of the court upon the first, and, as I deem it, the most important question submitted in this case.

The election in dispute was had on the 5th of November, 1889. On the 12th of the same month this suit was instituted in the Circuit Court of Middlesex county, and, on the 9th of June, 1890, the judgment of that court, now reviewed, was rendered.

That judgment is: " That the contestant, John H. Conger, was duly elected to the office of clerk of said county of Middlesex at the election held in said county on the 5th day of November, A. D. 1889, and the certificate of election heretofore granted to said incumbent, Patrick Convery, is hereby annulled and declared to be void and of no effect. And * * * that an order be issued, signed by said judge and under the seal of this court, commanding the sheriff of said county to put the said contestant into possession of said office without delay, and deliver to him all books, papers and effects belonging to the same, pursuant to the statute in such case made and provided."

It is perceived that this judgment contemplates as existing facts, that the votes cast at the election have been canvassed; that the election of the plaintiff in error has been duly certified, and, inferentially, that the previous term in the office in question has expired, for until that term expires the defendant in error cannot lawfully be put in possession of the office.

It is the duty of the executive to " grant " a commission to one who has been elected to the office of county clerk. *Const.*, *Art.* 5, ¶ 6. He ascertains that person by the official return of the proper board of canvassers, which must be made within a specified time in order that the public service may not suffer by a vacancy in office.

Presuming, as the law warrants me in absence of direct proof, that the governor has performed his duty, I assume that, at the rendition of the judgment reviewed, the plaintiff in error held a commission for the office in question from the executive, under the great seal of the state, and that in virtue of such commission, pursuant to his duty, he had actually

taken possession of that office. Under this assumption, it is perceived that the judgment of the Circuit Court, in effect, contemplates the eviction from an office, recognized and adopted by the constitution, of one who holds a commission to that office, issued in pursuance to the provisions of the constitution. In other words, that it proposes the seizure of the office and the annihilation of the commission.

In this state, sovereignty rests with the people. Their law, the constitution, prescribes the channels through which the sovereign power shall be exercised. In providing for the issuance of a commission by the executive, under the great seal of the state, this law expressly directs an act of sovereignty, and he who receives the commission holds under the sovereign.

The constitution also establishes an agency by which the validity of title to office and right to commission from the executive may be inquired into.

The machinery in England by which the title to office was questioned was the writ of *quo warranto*, the use of which was delegated by the crown to the Court of King's Bench, in which the sovereign was supposed to be personally present. It was a writ of grace and favor, grantable in discretion upon due cause shown and not demandable as a right. *State, Dufford, pros.*, v. *Decue*, 2 *Vroom* 302. Coming in such character, as though from the sovereign, it was the appropriate means of questioning the title to that which was held under, and in service of, the sovereign, and especially when the title questioned was supported by the royal commission.

What are called the prerogative writs, *certiorari, mandamus* and *quo warranto*, were transferred to the Supreme Court of this state, and the jurisdiction had by them was exclusively exercised by that court at the time of the adoption of our present constitution. *State, Dufford, pros.*, v. *Decue, supra; Flanagan* v. *Plainfield*, 15 *Vroom* 118, 123. Then, by that constitution, the Supreme Court as it at that time existed, with all its powers and jurisdiction, concurrent and exclusive, was continued. *Const., art.* 6, § 1 ; *art.* 10, § 1. Thus, the fundamental law

·established the Supreme Court the agent to question the title to the offices it provides for and the commissions it authorizes and requires. The mere provision of this agency by the constitution, precludes the establishment of another tribunal, by the law-making power, to accomplish the same end, legislation being limited to the regulation of that with which the fundamental law does not either impliedly, by dealing itself with the ·subject, or in express language, forbid it to intermeddle with.

The well established understanding of the effect of the constitution upon this subject is clearly stated by the present ·Chief Justice in the *In re Cleveland,* 22 *Vroom* 311, where the power of the legislature to invest the Chief Justice with authority to judicially determine who should hold an office pending proceedings to try the title to the office, was in question. His language is: "The right to adjudicate as to the title to public office is a power resident immemorially in the highest courts of the state, and such right is not alienable at the legislative will. This jurisdiction is fixed in these tribunals by the constitution, and must remain so fixed until that fundamental instrument be modified.

"Sitting in the character of Chief Justice, I can no more, even though acting under a legislative sanction, decide efficaciously with respect to a person's title to office than I can similarly decide with respect to the title to his land. I know of no way in which a person who is colorably and peaceably in possession of a public office can be dispossessed or ousted from it except by the writ of *quo warranto,* or by some mode of proceeding that is its substantial equivalent, and that process is, and always has been, one of the prerogative writs of the Supreme Court, and which consequently, except as to form, is absolutely beyond legislative control. Nor can the cognizance which the Supreme Court, by means of this procedure, exercises over the title to public office, be imparted by the legislature, either in whole or in part, to an individual or to any other tribunal.

"The consequence is, that if I were to attempt to adjudicate touching the titles to the offices now in question, I should

do so with the conviction that I was merely arrogating to myself a prerogative of the Supreme Court of the state of a high and indefeasible character."

It appears to me to be impossible to say that this judgment does not in effect determine the title to office. It clearly ousts him who holds under a commission authorized by the sovereign power of the state. The proceeding does not appear to me to be merely a recount, or the performance of a duty similar to that exercised by the judges of election and county canvassers, as is suggested in the opinion below. It contemplates the trial of questions with which those bodies cannot deal. Indeed, it contemplates a trial of all questions which may be presented upon *quo warranto*, and a judgment which, so far as the present tenure of the office is concerned, is equivalent to judgment upon *quo warranto*. It is a proceeding which need not be commenced before possession is taken of the office, and may extend beyond the date at which a commission under the great seal must issue, and after such commission takes effect. It may be that after it has run its course the proceeding by *quo warranto* is yet left, but for what? Not to inquire whether a commission, in full force, was improperly issued, but to determine, perhaps, whether that emblem of the majesty of the people, dishonored by the judgment of a power of inferior creation, shall be restored to virtue. It remains a means of second trial for, perhaps, exhausted suitors, contesting for the remnant of a well-nigh expired term. Its value as a remedy is certainly detracted from, to the extent that the proceeding considered may supplant it.

I conceive that the proceeding in question may be lawful in so far as it serves as a mere recount, but in so far as it authorizes a judgment of ouster, I think it is unconstitutional and void.

Upon this reasoning the Circuit Court appears to me to have been without jurisdiction to render the judgment complained of.

On the question whether the statute (*Rev., p.* 355, § 100) invested the Circuit Court with the jurisdiction it assumed to exercise.

*For affirmance*—DEPUE, VAN SYCKEL, BOGERT, BROWN, CLEMENT, WHITAKER. 6.

*For reversal*—THE CHANCELLOR, KNAPP, SMITH. 3.

On the question whether the judge of the Circuit Court erred in permitting one Louis Weil to give his opinion, as an expert, upon the question whether certain ballot box machines made the marks which appeared upon the ballots produced in court.

*For affirmance*—THE CHANCELLOR, DEPUE. 2.

*For reversal*—KNAPP, VAN SYCKEL, BOGERT, BROWN, CLEMENT, SMITH, WHITAKER. 7.

On the question whether the judge erred in directing that the ballot boxes and ballots, which were called for by the petitioner and examined and testified about in the case, should be considered as in evidence upon the part of the petitioners.

*For affirmance*—THE CHANCELLOR. 1.

*For reversal*—DEPUE, KNAPP, VAN SYCKEL, BOGERT, BROWN, CLEMENT, SMITH, WHITAKER. 8.