GLOUCESTER COUNTY CIRCUIT COURT.

IN THE MATTER OF THE CONTEST OF THE ELECTION OF GEORGE R. RAY TO BOROUGH COUNCIL OF THE BOROUGH OF PAULSBORO, GLOUCESTER COUNTY, NEW JERSEY.

Decided December 26, 1947.

For the petitioners, *William B. Kramer.*

For the incumbent George R. Ray, *James B. Avis* and *R. Edward Klaisz, Jr.*

PROCTOR, C. C. J. Eighteen residents and legal voters of the Borough of Paulsboro, County of Gloucester, filed a petition in this court praying that the election of George R. Ray to the Borough Council of the Borough of Paulsboro be annulled and that "* * * George L. Brown, the candidate receiving the next highest number of votes, be declared elected and a certificate of election be issued to him; or that the said office of Borough Councilman of the Borough of Paulsboro be declared to be vacant."

The petition alleges that at the time of the election George R. Ray was not eligible to fill the office of Borough Councilman of the Borough of Paulsboro, because he was not a registered voter and that the "said George R. Ray was ineligible to run for said office because his acceptance of the nomination was false and defective in that it contained a statement by the said George R. Ray that he was a legal voter."

The petition is filed pursuant to *R. S.* 19:29–1, b,i; *N. J. S. A.* 19:29–1, b,i.

At the hearing it appeared that George R. Ray was a citizen of the United States and has been a resident of the Borough of Paulsboro for a period of thirty years. It further appeared that George R. Ray was not registered to vote in the Borough of Paulsboro at the time he accepted the nomination to run for the office of Borough Councilman in said borough, nor was he registered on June 9th, 1947, the date of the pri-

mary election, nor was he registered on November 4th, 1947, the date of the general election; he did become a registered voter on December 6th, 1947, when he appeared at the office of the County Board of Elections and registered.

The incumbent Ray's eligibility to the office of Borough Council is to be determined as of the date he was elected and not at a subsequent date. *R. S.* 19:29-1, b; *N. J. S. A.* 19:29-1, b; *Chandler* v. *Wartman,* 6 *N. J. L. J.* 301. Therefore, the problem for determination is: Was Ray qualified to hold the office of Borough Councilman on November 4th, 1947, the date of the election?

*R. S.* 19:23-15; *N. J. S. A.* 19:23-15, provides, "Accompanying the petition (endorsing a candidate) and attached thereto each person endorsed thereon shall file a certificate, stating that he is qualified for the office mentioned in the petition; that he consents to stand as a candidate for nomination at the ensuing primary election, and that if nominated he agrees to accept the nomination. *Such acceptance shall certify that the candidate is a resident of and a legal voter in the jurisdiction of the office for which the nomination is to be made * * *."* (Italics supplied.)

In accepting the endorsement to stand for nomination for the office of Borough Councilman, Ray signed a certificate which included the statement: "I am a resident of and a legal voter in the jurisdiction of the office for which the nomination is to be made."

Article 2, paragraph 1 of the state constitution, *N. J. S. A.,* declares: "Every male citizen of the United States, of the age of twenty-one years, who shall have been a resident of this state one year, and of the county in which he claims his vote five months, next before the election, shall be entitled to vote for all officers that now are, or hereafter may be elective by the people; * * *."

*R. S.* 40:11-1; *N. J. S. A.* 40:11-1, provides: "* . * * every person holding an office, the authority and duties of which relate to a municipality, shall reside within the municipality."

It is fundamental that the right to hold public office is restricted to those who are qualified voters under the constitu-

tion. *Chandler* v. *Wartman, supra.* This principle was further declared by the legislature, subsequent to the adoption of the Nineteenth Amendment, in enacting *R. S.* 10:1–1; *N. J. S. A.* 10:1–1, which provides, "The right of citizens of this state to hold office or employment shall be co-extensive with their right to vote, * * *."

It will be seen from the undisputed facts that the incumbent Ray conforms with the constitutional (New Jersey Constitution, article 2, paragraph 1) and the statutory residential, *R. S.* 40:11–1; *N. J. S. A.* 40:11–1, qualifications to hold the office of Borough Councilman.

*R. S.* 19:31–1.1; *N. J. S. A.* 19:31–1.1, provides, "after July 1st, 1943, no person shall be permitted to vote in any election in any municipality unless such person is permanently registered."

Petitioners contend that to be a legal voter within the meaning of *R. S.* 19:23–15; *N. J. S. A.* 19:23–15, one must not only have the qualifications of a voter as set forth in the state constitution, but must further be permanently registered in accordance with *R. S.* 19:31–1.1; *N. J. S. A.* 19:31–1.1. The incumbent Ray contends that registration is not required to make one a legal voter within the meaning of *R. S.* 19:23–15; *N. J. S. A.* 19:23–15.

The right to hold office is a valuable one and its exercise should not be declared prohibited or curtailed except by plain provisions of the law. "* * * Statutes imposing disqualifications are to be construed strictly, while those declaring qualifications are to receive a liberal construction. In consequence, ambiguities are to be resolved in favor of eligibility to office." 42 *Am. Jur.* 908. The legislature cannot impose any qualification as to the right to vote in addition to or contrary to the constitutional provisions. *Allison* v. *Blake,* 57 *N. J. L.* 6; 29 *Atl. Rep.* 417. However, it may impose conditions in respect to the exercise of that right as part of the machinery for voting.

The purpose of requiring voters to register permanently is to protect the purity of the ballot box, by ascertaining before the vote is cast whether or not such persons possess the qualifications to vote and by preventing impersonations thereafter

at the polls. *In re Faith,* 22 *N. J. Mis. R.* 412; 39 *Atl. Rep.* (2d) 638; *In re Freeholders of Hudson County,* 105 *N. J. L.* 57; 143 *Atl. Rep.* 536.

In *Ransom* v. *Black,* 54 *N. J. L.* 446 (at *p.* 461); 24 *Atl. Rep.* 489, Mr. Justice Dixon, whose opinion was affirmed by the Court of Errors and Appeals in 65 *N. J. L.* 688; 51 *Atl. Rep.* 1109, said:

"It must be conceded that legislation is necessary to determine who are legal voters, to provide for them the means of voting, to prevent all others from voting, and to ascertain the result of the vote. All legislation conducive to these ends is, therefore, permissible. It is also clear that by a vote is intended the free and honest expression of the voter's choice, and hence statutes tending to preserve the voter from coercion or immoral influences are legitimate, provided they do not impair other rights. Outside of these purposes, I see no room for legislative interference with the right of suffrage."

Mr. Justice Kalisch, in upholding the constitutionality of the Election Law relating to registration, said in the case of *In re Freeholders of Hudson County, supra:*

"A qualified constitutional voter is entitled that his or her vote shall have the effect which the law intended it should have, and this would not be the case unless the ballot box is strictly guarded against illegal voting.

"From an examination of the election law relating to registration it is difficult to perceive how a duly qualified voter is deprived from voting in any case where he has complied with the regulations prescribed by the legislature concerning the exercise of that right. Of course, *if a qualified voter, under the constitution,* neglects to obey the prescribed legislative requirements necessary to qualify him as a voter, he has no one to blame but himself if he loses his right to vote. It is his own act which deprives him from *exercising the voting privilege.* It is quite clear from the decisions of the courts of this state that though an individual falls within the class of *those entitled to vote by virtue of the constitutional declaration,* nevertheless, the *manner in which and how he shall become entitled to exercise the right extended* to him or her, is left to the sound discretion and wisdom of the lawmaking power of this state." (Italics supplied.)

It is to be noted from the above opinion that Mr. Justice Kalisch distinguished between a *qualified voter under the constitution* and one who *shall become entitled to exercise the right* to vote pursuant to the registration law. Thus it will be seen that one may be a qualified or legal voter without exercising the right to vote. Registration does not confer the right; but is a condition precedent to the exercise of the right.

Cooley, in his authoritative treatise on Constitutional Limitations, volume 2, page 1368 (eighth edition), has set forth the rule which appears to be the philosophy of our courts (*In re Freeholders of Hudson County, supra*) as follows:

"While it is true that the legislature cannot add to the constitutional qualifications of electors, it must, nevertheless, devolve upon that body to establish such regulations as will enable all persons entitled to the privilege to exercise it freely and securely, and exclude all who are not entitled from improper participation therein.

"* * * Under such a regulation, the officers whose duty it is to administer the election laws are enabled to proceed with more deliberation in the discharge of their duties, and to avoid the haste and confusion that must attend the determination upon election day of the various and sometimes difficult questions concerning the right of individuals to exercise this important franchise.

"* * * *The provision for a registry deprives no one of his right, but is only a reasonable regulation under which the right may be exercised.*" (Italics supplied.)

The source of *R. S.* 19:23–15; *N. J. S. A.* 19:23–15, is the 1930 Revision of the Election Law (*Pamph. L.* 1930, *ch.* 187). At the time of the passage of the Election Revision Law permanent registration was not required throughout the state, but only in certain of the larger municipalities. Election Law, *supra,* as amended by chapter 174, *Pamph. L.* 1933; *N. J. S. A.* 19:31–1. Therefore, it seems to be clear that the legislature intended in *R. S.* 19:23–15; *N. J. S. A.* 19:23–15, that a person accepting an endorsement for nomination certify that he was a resident of the jurisdiction in which he was standing for office and a legal voter by virtue

of the constitutional declaration and not by virtue of regis-
tration, as permanent registration throughout the state did
not become effective until July 1st, 1943. *R. S.* 19:31–1.1;
*N. J. S. A.* 19:31–1.1.

Petitioners rely on the case of *Public Service Electric and
Gas Co.* v. *Camden,* 13 *N. J. Mis. R.* 693; 180 *Atl. Rep.* 778.
In that case a petition was filed with the governing body of
the City of Camden, requesting a referendum vote on the
question of whether the municipality should construct and
operate a plant for the manufacture of electricity. The
statute (*Pamph. L.* 1917, *ch.* 152) provided for the filing
of a petition "signed by at least twenty per cent. of the legal
voters of the municipality * * *." *N. J. S. A.* 40:62–15.
The City of Camden was within the operation of the perma-
nent registration system. *Pamph. L.* 1930, *ch.* 187, as
amended by *Pamph. L.* 1933, *ch.* 174. It was held that by
the term "legal voters" it was meant those constitutionally
qualified whose names appeared on the active registration list
of the city. However, it was not held that such must be the
meaning of those words in every other statutory provision.
As an example, *R. S.* 19:31–5; *N. J. S. A.* 19:31–5, provides
that one who has the proper qualifications as to citizenship,
age and residence "to qualify him as a legal voter, shall,
* * * be entitled to be registered * * *," and in *R. S.*
19:31–1.1; *N. J. S. A.* 19:31–1.1 (Permanent Registration
Act) it is provided that in 1943 the election board of each
district on the first Tuesday in September enter in the can-
vassing books the names and residences "of all legal voters
residing in their respective election districts" and make up
from the canvassing books a register of voters for use at the
general election. It is obvious that the term "legal voters"
used in the above statutes means those who are entitled to
vote by virtue of the constitutional declaration. *Public Ser-
vice* v. *Camden, supra,* was not a case involving eligibility to
or qualification for office. It is well within reason to under-
stand why "legal voters" must be registered, as regards the
sufficiency of a petition for submission to the voters of a
proposal to increase the powers of a municipality. Without
resort to the registration list, the governing body, to whom

the petition is presented, would have no method of ascertaining the identity of the signers and their residences, or their other qualifications or disqualifications. A municipality should not be put to the expense of calling a referendum election unless it is reasonably certain that the persons requesting such an election are eligible to vote on the public question. The only expeditious manner of determining who are eligible to vote is to consult the registry list. That seems to me to be the rationale of *Public Service* v. *Camden, supra*. This is a far cry from holding that one must be registered in order to stand for or occupy public office.

*Chandler* v. *Wartman, supra,* and *Jacobsen* v. *Gardella,* 22 *N. J. Mis. R.* 277; 38 *Atl. Rep.* (2d) 126, also relied upon by petitioners, are not in point. In the Chandler case the issue before Mr. Justice Parker was whether or not the incumbent was a citizen of the United States at the time of the election. In the Jacobsen case Judge Kinkead found that the incumbent was not a resident of the municipality in which he was elected in contravention of *R. S.* 40:11-1; *N. J. S. A.* 40:11-1.

In the present case the incumbent Ray was elected by a vote of the people. He should not be prevented from taking his seat as councilman, unless clearly ineligible under some constitutional or statutory provision. The language of *R. S.* 19:23-15; *N. J. S. A.* 19:23-15, in requiring a person accepting the endorsement for nomination to stand for office to certify that he is a legal voter, is not sufficiently explicit to show a legislative intent to deprive a person otherwise qualified from the right to hold a public office because he is not a registered voter. It is my opinion that the legislature, in employing the term "legal voter" in the above section, meant to refer to those qualities which must exist, in sum, to make of him a voter, as conferring on him the right to be placed among the class of persons which the constitution of our state creates and declares voters. When the legislature passed the Permanent Registration Law, it is my belief it did not intend to alter the qualifications of one seeking public office. The latter law refers to the idea of a recording of the fact that a person has given proper evidence of the existence

of the qualities which constitute him a legal voter. The election laws were never intended to set forth qualifications of office holders. Their requirements that one be a resident and legal voter are merely declaratory of the law as declared in other statutory provisions. *R. S.* 40 :11–1; *R. S.* 10 :1–1; *N. J. S. A.* 40 :11–1; *N. J. S. A.* 10 :1–1; *Chandler* v. *Wartman, supra.*

I have been unable to find any case in this state construing *R. S.* 19 :23–15; *N. J. S. A.* 19 :23–15. However, my view appears to be in accord with judicial interpretations of similar statutes in other jurisdictions. *Gilbert* v. *Breithaupt* (1940), 60 *Nev.* 162; 104 *Pac. Rep.* (2d) 183; 128 *A. L. R.* 1111, and supplementary note.

I have entertained the present petition, settling for immediate purposes and as a part of the electoral process the right to the office of councilman of the Borough of Paulsboro, without bar to further judicial inquiry by *quo warranto.* See *Conger* v. *Convery,* 52 *N. J. L.* 417 (at *p.* 444) ; 20 *Atl. Rep.* 166; *affirmed,* 53 *N. J. L.* 658; 24 *Atl. Rep.* 1002.

The judgment is that the said George R. Ray was eligible to the office of Borough Councilman of the Borough of Paulsboro on the day of said election, and his acceptance of the endorsement for nomination was not false and defective, and that he was duly elected to said office ; and further that the said George L. Brown was not elected to said office ; and further that the said office of Borough Councilman of the Borough of Paulsboro is not vacant.