60 N.J. Super. 576 (1960)
160 A.2d 57
ROBERT COTTINGHAM, SAUL VOGEL AND JULIUS FIELO, PLAINTIFFS-RESPONDENTS,
v.
ELEANOR B. VOGT, CLERK OF THE CITY OF EAST ORANGE, VINCENT CAREY, JOHN M. DUNN, LETRIS MILLER AND ANTHONY GIULIANO, CLERK OF THE COUNTY OF ESSEX, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued March 28, 1960.
Decided March 29, 1960.
Opinion April 1, 1960.
*577 Before Judges GOLDMANN, CONFORD and FREUND.
Mr. Richard M. Glassner argued the cause for appellants.
Mr. Julius Fielo argued the cause for respondents.
The opinion of the court was delivered by GOLDMANN, S.J.A.D.
Because of the necessity of preparing ballots for the impending primary election, this court specially scheduled oral argument of this appeal from a Law Division judgment ordering defendant County Clerk Giuliano to remove the names of defendants Carey, Dunn and Miller, candidates for the office of county committeeman, *578 from the primary ballot in and for the City of East Orange. After considering the argument of counsel we reversed the judgment and announced that this opinion would be prepared and filed at an early date.
Plaintiffs filed their nomination petitions for county committeeman with defendant Vogt, City Clerk of East Orange, on March 9, 1960. Defendants Carey, Dunn and Miller filed their petitions the next day. Plaintiffs thereupon duly filed their written objections to the nominations of these defendants with the city clerk, in accordance with R.S. 19:13-10, claiming that they had failed to vote for a majority of the candidates of their political party at the last general election in 1959. The city clerk proceeded to pass upon the validity of the objections, N.J.S.A. 19:13-11, and overruled them.
Plaintiffs then instituted an action in the Superior Court, Law Division, seeking a reversal of the city clerk's determination. The trial judge concluded that the clerk had erred because defendants had failed to vote in the last general election, and accordingly entered the judgment under appeal.
The position taken by plaintiffs in the Law Division was that the requirements for candidacy in a primary election, set out in N.J.S.A. 19:23-7 and 19:23-15, have been fully adjudicated by our courts. George v. Gillespie, 40 N.J. Super. 139 (App. Div. 1956), and In re Dvorken, 12 N.J. Misc. 438, 172 A. 337 (Sup. Ct. 1934), are cited as authority for the proposition that candidates at a primary election must have voted for a majority of the candidates of their political party at the last general election. The argument is that since N.J.S.A. 19:23-7 requires that a petition of nomination shall recite that the signers, among other things, "are members of a political party (naming the same), and that at the last general election preceding the execution of the petition they voted for a majority of the candidates of such political party," the George and Dvorken cases require that the candidates themselves satisfy this requirement.
*579 The portion of N.J.S.A. 19:23-7 applicable to a candidate reads:
"Accompanying the petition each person indorsed therein shall file a certificate, stating that he is qualified for the office mentioned in the petition, that he is a member of the political party named therein; that he consents to stand as a candidate for nomination at the ensuing primary election of such political party, and that, if nominated, he consents to accept the nomination, to which shall be annexed the oath of allegiance prescribed in section 41:1-1 of the Revised Statutes duly taken and subscribed by him before an officer authorized to take oaths in this State."
And N.J.S.A. 19:23-15, which deals with acceptance by a candidate, recites that
"Accompanying the petition and attached thereto each person indorsed therein shall file a certificate, stating that he is qualified for the office mentioned in the petition; that he consents to stand as a candidate for nomination at the ensuing primary election, and that if nominated, he agrees to accept the nomination. Such acceptance shall certify that the candidate is a resident of and a legal voter in the jurisdiction of the office for which the nomination is to be made and there shall be annexed thereto the oath of allegiance prescribed in section 41:1-1 of the Revised Statutes duly taken and subscribed by the person so nominated before an officer authorized to take oaths in this State."
Admittedly, the only ground for the result reached by the Law Division was that defendant candidates had not voted in the 1959 election. There is no such requirement in either of the above-quoted sections of the Election Act. It is entirely reasonable to say that had it been the legislative intention that a candidate must have voted in the last general election in order to qualify as a nominee, the Legislature would have explicitly manifested that intention. As it is, the only requirements under the quoted sections are that the candidate is qualified for the office mentioned in the petition; he is a member of the political party named therein; he consents to stand as a candidate for nomination at the ensuing primary election of such political party and, if nominated, consents to accept the *580 nomination; and he is a resident of and a legal voter in the jurisdiction of the office for which the nomination is made. (L. 1949, c. 24, § 10, added the requirement that the candidate annex to his certificate of acceptance the oath of allegiance prescribed by N.J.S.A. 41:1-1. The act was held unconstitutional in Imbrie v. Marsh, 3 N.J. 578 (1950)).
In Dvorken the only question was whether the candidate was a member of the Democratic Party and therefore entitled to have his name printed on the primary ballot of that party. Justice Case determined that Dvorken was a bona fide Democrat. In the course of a short opinion he stated it was "reasonable to suppose that the Legislature in requiring, in paragraph 272, supra [of the Election Act, Revision of 1930; L. 1930, c. 187; now N.J.S.A. 19:23-7], the candidate to certify his party membership, intended to apply that test of party allegiance which it had inserted a few lines earlier in the same paragraph, namely, the voting for a majority of the party candidates at the last election for members of the general assembly, and the intention to affiliate with the party at the next ensuing election." (12 N.J. Misc., at page 440.) It is to be noted that Dvorken had actually voted in the last general election for a majority of the members of his party.
In the George case, decided by this court, the sole question was whether defendant was a Republican entitled to have his name appear upon the primary ballot. In concluding that he was we made passing reference to the Dvorken case, stating that the construction given by it to N.J.S.A. 19:23-7 was sound, and the statute "requires only a statement of membership in the party, that the signer voted for a majority of the candidates of the party in the last general election, and that he intends to affiliate with that party at the ensuing general election"  conditions fulfilled by defendant Gillespie. (40 N.J. Super., at page 144.) Like Dvorken, Gillespie too had voted for a majority of the candidates of his party in the last general election.
*581 What was said in Dvorken and George was, in fact, dictum in the light of the identical issue actually involved in each case. That dictum, about a nominee having had to vote for a majority of the candidates of his political party at the last general election, could apply only if Carey, Dunn and Miller had voted last November. Whatever may be said about the validity of that requirement, it obviously has no application in the present circumstances. What we incidentally said in George was never intended to apply to a situation where the nominee, as here, failed to vote at the last general election. And we are confident that Justice Case would not have meant what he said in the Dvorken case to extend to the situation here presented.
The right to run for and hold public office is a valuable one, and its exercise should not be declared prohibited or curtailed except by the plainest provisions of the law, whether embodied in constitution or statute. As noted, neither N.J.S.A. 19:23-7 nor 19:23-15 contains any requirement that a candidate should have voted at the last general election. Our Constitution is, of course, entirely silent on the subject.
To say that an otherwise qualified person may not stand as candidate at the primary of his party because he did not vote the preceding November would amount to an unreasonable impairment of civil and political rights. While it was held in Stevenson v. Gilfert, 13 N.J. 496 (1953), that the right to participate in a party primary was subject to regulation by the Legislature to prevent improper manipulation of party affairs by outsiders, the court stressed that such regulation must be reasonable. We are of the firm conviction that it is not reasonable to debar a citizen from candidacy for nomination by his party at a primary election merely because he failed to vote at the prior general election, and that the Legislature had no such intent in enacting the statute here involved.
For example, one can readily imagine a situation where a candidate did not vote because he was suddenly taken ill *582 or suffered an accident and was taken to a hospital; or was unavoidably delayed in his return from a distant place, so as to arrive too late to vote; or was suddenly called away by an emergency, such as the illness or death of a loved one resident at some distance from the polling place.
We therefore hold that it is not a qualification for candidacy in a primary election that the nominee should have voted at the last general election. The judgment under review is reversed. No costs.