152 N.J. Super. 509 (1977)
378 A.2d 72
JOHN ALSTON AND FRANK P. PERRUCCI, PLAINTIFFS,
v.
CHARLES MAYS, HIS CAMPAIGN WORKERS AND SUPPORTERS, JOSEPH T. BRADY, HUDSON COUNTY SUPERINTENDENT OF ELECTIONS, HUDSON COUNTY BOARD OF ELECTIONS AND GEORGE W. LEE, ACTING SECRETARY OF NEW JERSEY, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided August 19, 1977.
*511 Mr. Robert F. Sloan for plaintiffs John Alston and Frank P. Perrucci.
Mr. Benjamin H. Chodash for defendant, Charles Mays, his campaign workers and supporters (Messrs. Krieger & Chodash, attorneys).
Mr. Gregory Nagy, Deputy Attorney General (William F. Hyland, Attorney General of New Jersey for defendants, Joseph T. Brady, Hudson County Superintendent of Elections, *512 Hudson County Board of Elections and George W. Lee, Acting Secretary of State of New Jersey, attorney).
CALISSI, J.S.C.
The essential facts in this matter are uncontradicted. Defendant Charles Mays is a 36-year-old resident of New Jersey. He resides at 199 Seaview Avenue, Jersey City, which is located in the 31st Assembly District. He has lived at that address for over four years. Prior thereto he resided in the same city at 238 Carbon Street, which is located in the 32nd Assembly District. He was and continued to be a registered voter in that District up to May 31, 1977. On that date, which was seven days prior to the primary election, defendant transferred his voter registration from the Carbon Street address to his actual residence, 199 Seaview Avenue. Charles Mays originally registered to vote in 1964.
A petition for defendant's nomination as candidate for Democratic Assemblyman from the 31st Assembly District was regularly filed, and the Secretary of State in turn filed the requisite certification with the County Clerk of Hudson County. At the primary election held on June 7, 1977, defendant was one of the two successful Democratic candidates from the 31st Assembly District.[1]
Plaintiffs William O. Perkins, Jr. and John Alston, candidates for the Democratic nomination for the General Assembly of New Jersey, filed a complaint in lieu of prerogative writs on or about May 31, 1977, seeking a declaratory judgment that defendant Charles Mays was not, as a matter of law, a qualified and eligible candidate for the General Assembly of New Jersey in the primary election of June *513 7, 1977 from the 31st Assembly District. The complaint was verified by William O. Perkins, Jr. Plaintiffs sought an order requiring the Board of Elections and the Superintendent to notify the general public of the ineligibility of defendant and the removal of the lever on the voting machine to prevent his being a viable candidate. Assignment Judge O'Brien, refused to enter an order to show cause; instead he entered an order denying such application without an adjudication as to the merits, on the ground that sufficient cause had not been established to justify such order.
On June 20, 1977 plaintiff Perkins filed a stipulation of dismissal. On June 17, 1977 an amended complaint was filed by John Alston and Frank P. Perrucci, another candidate in the Democratic primary election. The amended complaint added an additional defendant, the Acting Secretary of State.
On July 11, 1977 Charles Mays filed an answer to the complaint and amended complaint. The remaining defendants, by way of answer to the amended complaint, admit that Charles Mays was permanently registered and that he transferred his registration to his Seaview Avenue address on May 31, 1977. Charles Mays moved for summary judgment, that motion being returnable on August 19, 1977. Defendants Secretary of State, Hudson County Superintendent of Elections and the Hudson County Board of Elections moved for an order dismissing the complaint on the ground of failure to state a claim upon which relief can be granted, that motion returnable August 15, 1977. The entire matter was set down for trial on August 15, 1977. On that date the motion concerning the Secretary of State, Superintendent of Elections and the Board of Elections was granted without opposition. The Attorney General without objection, was permitted to present legal argument on behalf of these parties as an amicus curiae.
The matter was designated by the court as an election contest, pursuant to N.J.S.A. 19:29-1 et seq. All parties *514 concede that the requirements for filing an election contest have been met, with the exception of the provision under N.J.S.A. 19:29-2 requiring that a bond be filed by petitioner. The court ordered that the bond be filed by August 19, 1977.
All parties agreeing that the issue involved at trial would be resolved on the law, legal argument was heard and no testimony taken on the trial date.
The argument advanced by plaintiffs is essentially two-pronged. First, they argue that defendant Mays did not meet the constitutional requirement for membership in the General Assembly as set forth in N.J. Const. (1947), Art. IV, § I, par. 2, in that he did not meet the requirement of suffrage. The applicable constitutional provision provides the following:
No person shall be a member of the General Assembly who shall not have attained the age of twenty-one years and have been a citizen and resident of the State for two years, and of the district for which he shall be elected one year, next before his election. No person shall be eligible for membership in the Legislature unless he be entitled to the right of suffrage.
Plaintiffs urge that N.J.S.A. 19:4-1 delineates the right of suffrage. This statute provides that all qualified persons shall have the right of suffrage, and "shall be entitled to vote in the polling place assigned to the election district in which he actually resides, and not elsewhere * * *."
Since N.J.S.A. 19:31-11(a) requires that changes in registration be made on or before the 29th day preceding the election, plaintiffs argue that Mays lost his right to suffrage, since he could not vote in the district in which he resided on primary day.
The second argument advanced by plaintiffs concerns an alleged violation of N.J.S.A. 19:23-15. That statute provides that a candidate must file with his petition a certificate stating, among other things, that he is a legal voter in the jurisdiction of the office for which the nomination is sought. *515 When Mays filed his nominating petition he was, by his own admission, not a registered voter in the 31st Assembly District. Hence, the crux of plaintiffs' argument is the definition and meaning of the term "legal voter." Can Mays be a qualified or legal voter without being a registered voter, but one who is unable to exercise that right due to statutory procedural requirements?
The last New Jersey case which squarely addressed these questions is In re Ray, 26 N.J. Misc. 56, 56 A.2d 761 (Cir. Ct. 1947). In that case wherein the opinion was written by Circuit Court Judge Proctor (later an Associate Justice of the New Jersey Supreme Court), the election of Ray to a councilmanic seat in the Borough of Paulsboro was challenged by petition. The petition alleged that Ray was not a registered voter of Paulsboro, either on the day of the primary or on the date of the general election, and therefore not a legal voter although he signed a certificate which stated that he was a resident and legal voter in Paulsboro when he accepted the endorsement to stand for nomination.
Judge Proctor held that a person can be a qualified or legal voter under the Constitution without exercising the right to vote, and that registration does not confer the right to vote but is merely a condition precedent to the exercise of that right. Since the right to hold public office is a valuable one which should not be curtailed, except by plain provisions of the law, In re Ray, supra at 59, Judge Proctor liberally construed New Jersey statutes which may have imposed disqualifications and held that Ray was a legal voter in that, constitutionally, he met all requirements of the right to vote, which is separate and distinct from legislative enactments providing for the mode and manner of exercising that right.
In arriving at this holding Judge Proctor referred to judicial interpretations of similar statutes in other jurisdictions, relying primarily on Gilbert v. Breithaupt, 60 Nev. 162, 104 P.2d 183, 28 A.L.R. 1111 (Sup. Ct. 1940). In that case one of the conditions of eligibility to run for Las Vegas offices *516 was that one be a "qualified voter." The Nevada Supreme Court held that failure to register did not defeat this condition, when the state constitution did not make registration one of the prescribed conditions of the right to vote.
It should be noted, parenthetically, that in the Ray and Gilbert cases, supra, neither candidate was registered to vote anywhere in his respective state. Defendant Mays had been a registered voter since 1964 and was in fact registered in the 31st Assembly District seven days prior to the primary election.
N.J. Const. (1947), Art. II, par. III, sets forth the qualifications of the right of suffrage:
Every citizen of the United States, of the age of 18 years, who shall have been a resident of this State and of the county in which he claims his vote 30 days, next before the election, shall be entitled to vote for all officers that now are or hereafter may be elective by the people, and upon all questions which may be submitted to a vote of the people.
It is to be noted that no registration requirements are appended to the right of suffrage by the Constitution.
Subsequent to the Ray decision, New Jersey courts have considered other legal challenges to the right of a person to stand for public office.[2] In Cottingham v. Vogt, 60 N.J. Super. 576, 160 A.2d 57 (App. Div. 1960), the court had to determine whether or not a candidate, to be eligible and qualified for the office of county committeeman, should have voted in the last general election. Finding that the Constitution was silent on the issue, the court examined sections of the Election Act and found that there was no legislative intent that a candidate should have voted in the last general election  citing Stevenson v. Gilfert, 13 N.J. 496 (1953), which held that the right to participate in a primary election *517 was subject to reasonable procedural regulations by the Legislature to prevent improper manipulation of party affairs by outsiders. The court in Cottingham stated:
We are of the firm conviction that it is not reasonable to debar a citizen from candidacy for nomination by his party at a primary election merely because he failed to vote at the prior general election, and that the Legislature had no such intent in enacting the Statute here involved, [60 N.J. Super. at 581]
It is essential that legislative enactments designed to establish an orderly system and procedure in the electoral process be not so narrowly construed as to prevent, obstruct, discourage or otherwise frustrate the right of persons constitutionally qualified for public office from offering themselves as candidates and permitting the citizens to approve or reject their candidacy.
Primary election laws do not confer the right of qualified persons to become candidates. Such laws can only regulate the exercise of such right by enactment designed to assure free and open elections devoid of fraud, disorder and confusion. State ex rel. Mihlbaugh v. Bogart, 73 Ohio App. 47, 53 N.E.2d 75 (App. Ct. 1943).
If primary election requirement statutes were to be interpreted strictly, or if indeed they begin to infringe upon constitutional provisions, then freedom of choice in an election is severely curtailed. This potential curtailment has always been abhorred by the judiciary. Thus, it has been held that election laws are to be liberally construed so as to effectuate their purpose. Carson v. Scully, 89 N.J.L. 458, 465 (Sup. Ct. 1916). They should not be construed so as to deprive voters of their franchise or so as to render an election void for technical reasons. In re Stoebling, 16 N.J. Misc. 34, 196 A. 423 (Cir. Ct. 1938); Sharrock v. Keansburg, 15 N.J. Super. 11 (App. Div. 1951), cited in Wene v. Meyner, 13 N.J. 185, 197 (1953).
It is not the right to vote which is the underpinning of our democratic process; rather, it is the right of choice *518 for whom to vote. Gangemi v. Rosengard, 44 N.J. 166, 170 (1965). In New Jersey this right has been carried to its furthest limit in In re Keogh-Dwyer, 106 N.J. Super. 567 (Law Div. 1969), wherein the court declared that votes for a dead man were in effect votes to create a vacancy in preference to voting for a named candidate. In expressing that view the court stated:
We adhere to the firm conviction that our election statutes invest the electorate at a primary election with the privilege and the obligation not only of nominating a candidate they want to represent the party in the general election but also of rejecting a candidate they do not want [at 575; emphasis added]
In the present case Charles Mays was a successful candidate for Democratic nomination to the General Assembly from the 31st Assembly District. The voters in selecting him had in effect rejected the candidacies of plaintiffs. Hence the election is voidable only if such a showing of illegality is made so as to render the voters' decision fraudulent. No such showing exists in this case. Candidate Mays, when he attested that he was a legal voter, clearly was not attesting that he was a registered voter of the 31st Assembly District. The distinction, as we have seen, has been drawn by the New Jersey courts as well as those of other jurisdictions. Therefore, it cannot be held that his signature was put to a fraudulent document. Secondly, Mays constitutionally had the right to vote even if, in fact, he did not have the ability to exercise that right on the date when the petition was filed and the certificate of acceptance was signed.
For the above stated reasons, judgment is granted for defendant Mays and against plaintiffs.
NOTES
[1] The primary election vote was as follows:

 Patrick E. Pasculli 11,737
 Charles Mays, Sr. 11,619
 Frank P. Perrucci 8,678
 Morris Pesin 7,532
 John Alston 7,414
 William O. Perkins, Jr. 5,757

[2] See generally, Imbrie v. Marsh, 3 N.J. 578 (1950); Bell v. Foster, 83 N.J. Super. 455 (App. Div. 1964); 25 Am. Jur.2d, Elections, § 177; Stothers v. Martini, 6 N.J. 560 (1951); Gangemi v. Berry, 25 N.J. 1 (1957).