# BOARD OF SUPERVISORS OF ELECTIONS OF PRINCE GEORGE'S COUNTY, MARYLAND
## *v.* VINCENT F. GOODSELL

[No. 36, September Term, 1978.]

*Per Curiam Order July 28, 1978.*

*Opinion Filed January 18, 1979.*

*Ronald Willoner,* with whom were *DePaul, Willoner & Kenkel, P.A.* on the brief, for appellant.

*Samuel L. Serio,* with whom were *O'Reilly & Serio* on the brief, for appellee.

ELDRIDGE, J., delivered the opinion of the Court.

The appellee, Vincent F. Goodsell, on June 6, 1978, filed a certificate of candidacy for the office of County Executive of Prince George's County, Maryland. The appellant, the Board of Supervisors of Elections of Prince George's County, refused to accept the certificate or place his name on the ballot, maintaining that he did not meet the qualifications for the office set forth in the County Charter. Goodsell then brought this action in the Circuit Court for Prince George's County for a writ of mandamus. After a hearing, the court ordered that a writ of mandamus be issued, directing the Board to accept Mr. Goodsell's certificate of candidacy and to place his name on the ballot for the upcoming September 1978 primary election. The Board took an appeal to the Court of Special Appeals. Because of the importance of the matter and the need for expedition, we issued a writ of certiorari prior to a decision by the Court of Special Appeals. On July 28, 1978, we filed a per curiam order affirming the decision of the circuit court, and we now state our reasons.

The issue in this case concerns § 405 of Art. IV of the Prince George's County Charter, which provides, in pertinent part, that "[t]he County Executive shall have been a *qualified voter* of Prince George's County for at least five years immediately preceding his election." (Emphasis supplied.) Mr. Goodsell became a resident of Prince George's County on August 1, 1972, and has resided there continuously since, a period in excess of five years. On April 23, 1976, he registered to vote in Prince George's County and has remained registered since that time. Thus, at the time he tried to file for office, he had been a registered voter of the county for just slightly more than two years. Goodsell had satisfied all other requirements relating to his eligibility as a candidate for County Executive.

In the circuit court, the Board contended that Goodsell was not entitled to be a candidate for County Executive because he was not a "qualified voter" of Prince George's County for the five years immediately preceding the election. The Board's position was that registration was one of the qualifications to vote, and that, therefore, one could not be

a qualified voter for five years unless he had been a registered voter for five years.

Goodsell, on the other hand, argued that there was a distinction between a qualified voter and a registered voter, and that a qualified voter was one who possessed the citizenship, age and residency qualifications to be entitled to register and vote. Alternatively, Goodsell argued that if the Prince George's County Charter required that one be a *registered* voter for the five years immediately preceding the election, such requirement would deny him the equal protection of the laws.

The circuit court, in deciding that Goodsell was entitled to be on the ballot, held that § 405 of the Prince George's County Charter does not mean that a person must be a registered voter of the County for five years to be eligible to run for the office of County Executive. The court stated that the purpose of registration is "to compile a list of qualified voters for the administrative purpose of avoiding last-minute confusion concerning who is qualified to vote. Thus, registration is not a prerequisite to one qualifying to vote; it is merely an administrative process which lists those voters who are already qualified to vote." Because of the circuit court's interpretation of Art. IV, § 405, of the Prince George's County Charter, it was unnecessary for the court to discuss Goodsell's alternate equal protection argument.

In this Court, the parties make the same arguments as below. Thus, the appellant Board, relying upon various provisions of the Prince George's County Charter, argues that the framers of the Charter intended that the phrase "qualified voter" in Art. IV, § 405, refers to a person who has the legal capacity to vote and has in fact been registered to vote for at least five years. The Board further argues, relying upon cases upholding substantial *residency* requirements to be a candidate for public office, that a five year *registration* requirement does not deprive one in Goodsell's position of the equal protection of the laws.

The appellee Goodsell, on the other hand, in arguing that there is a distinction between a "qualified voter" and a "registered voter," and that to be a qualified voter one need

not be registered, relies upon provisions of the Maryland Constitution and the State Election Code, Maryland Code (1957, 1976 Repl. Vol.), Art. 33. These provisions seem to indicate that registration is not one of the "qualifications" for voting but is a mechanism for evidencing which voters have the requisite qualifications.[1] In addition to these Maryland constitutional and statutory provisions, Goodsell relies upon cases in other jurisdictions in support of his argument that registration is not a qualification within the meaning of the phrase "qualified voter." *McComb v. Robelen,* 13 Del. Ch. 157, 116 A. 745 (1922); *Gilbert v. Breithaupt,* 60 Nev. 162, 104 P. 2d 183 (1940); *Alston v. Mays,* 152 N.J. Super. 509, 378 A. 2d 72 (1977); *In re Ray,* 26 N.J. Misc. 56, 56 A. 2d 761 (1947); *In re Sullivan,* 307 Pa. 221, 160 A. 853 (1932); *Hindman v. Boyd,* 42 Wash. 17, 84 P. 609, 613 (1906). *But cf. Lane v. Henderson,* 39 Ariz. 457, 7 P. 2d 588 (1932); *State ex rel. Burke v. Campbell,* 542 S.W.2d 355, 357-358 (Mo. Ct. App. 1976); *Southerland v. Town of Goldsboro,* 96 N. C. 49, 1 S. E. 760 (1887); *Defilipis v. Russell,* 52 Wash. 2d 745, 328 P. 2d 904 (1958). Goodsell also reiterates his argument that, if the Prince George's County Charter does require that a person be a registered voter for five years to be eligible to run for County Executive, such requirement unconstitutionally discriminates against residents of Prince George's County who have not been registered to vote for five years.

---

1. Art. 1, § 1, of the Maryland Constitution sets out the qualifications of voters in this State, and these relate to citizenship, age and residency. Registration is not listed in § 1 as a "qualification." Section 5 of Art. 1, renumbered § 2 as a result of a constitutional amendment approved in November 1978, deals with the registration of voters, stating in part that "[t]he General Assembly shall provide by law for a uniform Registration of the names of all the voters in this State, who possess the qualifications prescribed in this Article, which Registration shall be conclusive evidence to the Judges of Election of the right of every person, thus registered, to vote at any election . . . ."

The Election Code, Art. 33, § 3-4, also prescribes "qualifications" for voting, listing the constitutional qualifications as well as two others. Registration is not one of the listed qualifications, although it is dealt with as follows in subsection (a): "Only persons, constitutionally qualified to vote in the precinct or district, as the case may be, shall be registered as qualified voters."

(1)

We assume, without deciding, that registration is not one of the qualifications to vote as the term "qualified voter" is *generally* interpreted, and that Art. I of the Maryland Constitution and § 3-4 of the Election Code reflect this general meaning. However, the issue in this case is not the meaning of the phrase "qualified voter" generally or the meaning of that phrase in some other context. The issue is what was the intent of those who framed and adopted the Prince George's County Charter. It is true that, in the absence of any indication in the Charter that the language was being used in a special sense, we would assume that the phrase was intended to have its general meaning. *State Farm Mut. Auto. Ins. Co. v. Ins. Com'r,* 283 Md. 663, 670, 392 A. 2d 1114, 1118 (1978); *Wheeler v. State,* 281 Md. 593, 598, 380 A. 2d 1052 (1977), *cert. denied,* 435 U. S. 997, 98 S. Ct. 1650, 56 L.Ed.2d 86 (1978); *Balto. Gas & Elect. Co. v. Board,* 278 Md. 26, 31, 358 A. 2d 241 (1976); *Blue Cross v. Franklin Sq. Hosp.,* 277 Md. 93, 105, 352 A. 2d 798 (1976); *Bright v. Unsat. C. & J. Fund Bd.,* 275 Md. 165, 169, 338 A. 2d 248 (1975). Nevertheless, in our view, the provisions of the Prince George's County Charter make it clear that the phrase "qualified voter" means one who, among other things, is registered to vote.

The words "qualified voter" are used in different places in the County Charter. The meaning of the phrase is most clearly shown by Art. III, § 319, of the Charter. It provides that, with certain exceptions, any law enacted pursuant to the Charter may, upon a petition containing the signatures of 10,000 "qualified voters," be submitted to the electorate for referendum. The section goes on to state that "[a] minor variation in the signature of a petitioner between his signature on a petition and that on the voter registration records shall not invalidate the signature." Obviously, this provision contemplated that "qualified voters" were those whose signatures were on the voter registration records. The next sentence of the section provides that the appellant Board of Supervisors of Elections should verify the qualifications of each petitioner. The only way in which the Board could verify the qualifications of 10,000 or more signatories would

be to check the signatures against the voter registration records. But if one did not have to be registered to be a "qualified voter," and thus eligible to sign a petition, it would be impossible for the Board to carry out its verification responsibilities. *See Board of Supervisors Carroll Co. v. Smith,* 111 U. S. 556, 565, 4 S. Ct. 539, 28 L. Ed. 517 (1884); *Southerland v. Town of Goldsboro, supra.*

The referendum section also provides that "[i]f such a petition is filed, the law to be referred shall not take effect until thirty calendar days after its approval by a majority of the qualified voters of the County voting thereon at the next" regular election. In using the phrase "qualified voters," the framers were likely referring to registered voters, as only registered voters would be "voting thereon" at the next election.

Article III, § 303, and Art. IV, § 403, of the Charter provide that members of the County Council and the County Executive "be nominated and elected by the qualified voters of the entire County . . . ." However, under Art. I of the Maryland Constitution, no one may vote in any election unless that person is a registered voter. When the term "qualified voters" in the Charter is viewed in light of this constitutional requirement it would seem clear that under the Prince George's County Charter, in order to be a qualified voter one must be registered.

In sum, we agree with the appellant Board that the phrase "qualified voter" in the Prince George's County Charter means one who possesses the present capacity to vote, and therefore he must be registered. Consequently, the provision in Art. IV, § 405, of the Charter, that the County Executive must be a "qualified voter" of the County for at least five years immediately preceding his election, includes a five year *registration* requirement. We must, therefore, deal with Goodsell's alternate argument that a five year registration requirement to be a candidate for County Executive unconstitutionally discriminates against those registered for a lesser period of time.

(2)

The first step in dealing with a contention that a particular classification denies to members of one class the equal protection of the laws is to determine the appropriate standard for reviewing the classification. *Bullock v. Carter,* 405 U. S. 134, 142, 92 S. Ct. 849, 855, 31 L.Ed.2d 92 (1972); *Wheeler v. State, supra,* 281 Md. at 601-602. The usual standard of judicial review is the so-called rational basis test, which involves a high degree of deference to the legislative judgment. Under it, a classification made by law is presumed to be reasonable; the person assailing it has a heavy burden of showing that it is essentially arbitrary; and "if any state of facts reasonably can be conceived that would sustain it, the existence of that state of facts at the time the law was enacted must be assumed." *Lindsley v. Natural Carbonic Gas Co.,* 220 U. S. 61, 78-79, 31 S. Ct. 337, 340, 55 L. Ed. 369 (1911); *Montgomery Co. v. Fields Road,* 282 Md. 575, 579-580, 386 A. 2d 344 (1978); *Wheeler v. State, supra,* 281 Md. at 602-603, and cases there collected. On the other hand, "[w]hen fundamental rights or a suspect class are involved, the classification must be subjected to close judicial scrutiny and must be justified by a compelling state interest." *Wheeler v. State, supra,* 281 Md. at 601. In the present case, the validity of the requirement that a candidate for Prince George's County Executive be a registered voter for five years may well depend upon which standard of judicial review is appropriate.

The appellant Board, citing *Bullock v. Carter, supra,* argues that "the pursuit of public office is [not] a fundamental right," and that, therefore, the rational basis test is applicable here. The Court in *Bullock* did point out that it "has not heretofore attached such fundamental status to candidacy as to invoke a rigorous standard of review." 405 U. S. at 142-143. Nevertheless, the *Bullock* case does not support the Board's argument that no fundamental right is implicated by the charter provision here at issue. In *Bullock v. Carter, supra,* several prospective candidates for local office in Texas brought an action to have a state statutory scheme, requiring very high filing fees in primary elections, declared invalid

under the Equal Protection Clause of the Fourteenth Amendment. Although, as previously noted, the Court indicated that the right to run for public office is itself not a fundamental right, the Court went on (405 U. S. at 143, emphasis supplied):

> "However, the rights of voters and the rights of candidates do not lend themselves to neat separation; laws that affect candidates always have at least some theoretical, correlative effect on voters. Of course, not every limitation or incidental burden on the exercise of voting rights is subject to a stringent standard of review.... Texas does not place a condition on the exercise of the right to vote, nor does it quantitatively dilute votes that have been cast. Rather, the Texas system creates barriers to candidate access to the primary ballot, thereby tending to limit the field of candidates from which voters might choose. The existence of such barriers does not of itself compel close scrutiny.... *In approaching candidate restrictions, it is essential to examine in a realistic light the extent and nature of their impact on voters.*"

The Court then stated that the high filing fees give the Texas system an "exclusionary character," that many potential office seekers would as a practical matter be precluded from running for office, that the effect on voters "is neither incidental nor remote," and that the voters are "substantially limited in their choice of candidates." *Id.* at 143-144. Because of this impact upon voter choice, the Court concluded that the Texas filing requirements were subject to the same "close scrutiny" test which is applicable to laws placing barriers upon the right to vote. *Id.* at 144. *See Dunn v. Blumstein,* 405 U. S. 330, 92 S. Ct. 995, 31 L.Ed.2d 274 (1972); *Harper v. Virginia Board of Elections,* 383 U. S. 663, 86 S. Ct. 1079, 16 L.Ed.2d 169 (1966).

Recently the United States Court of Appeals for the Fifth Circuit applied the *Bullock* principles in a case like the instant one, concluding that a durational registration requirement is

subject to strict scrutiny. *Henderson v. Fort Worth Independent Sch. Dist.,* 526 F. 2d 286 (5th Cir. 1976), was an attack upon a Texas law requirement that candidates for the Fort Worth school board be "qualified voters" in the district for three years. The court initially pointed out that, under Texas law, this provision meant that a candidate had to be a registered voter for three years, 526 F. 2d at 289. After quoting from *Bullock v. Carter, supra,* the Fifth Circuit observed that "the extent and nature of the impact on voters, examined in a realistic light, is the key to the" appropriate standard for judicial review. *Id.* at 291. The court then concluded: "Not unlike the exorbitant filing fees in *Bullock v. Carter,* . . . [the three year registration requirement] denies access to what must be assumed is a significant number of potential school board candidates, and on that basis the statute's impact on voters is substantial. . . . We conclude that . . . [the statute] must withstand strict scrutiny." *Id.* at 292.[2]

If a three year registration requirement for local office has a substantial impact upon voter choice as held in the *Henderson* case, it follows that a five year requirement like the one in the case at bar will have an even greater impact.

It has often been pointed out that our society today is extremely mobile. Moreover, it is likely that there is much greater movement among counties within a state than between different states. Using Prince George's County as an example, the 1970 population of the County was 661,719.[3] According to the most recent United States Census Bureau information, in the five year period between 1965 and 1970, 229,448 people immigrated into Prince George's County. Within that same period of time, 129,855 people moved out of the county. Consequently, the total movement of the population both into and out of Prince George's County for this five year period was 359,303, an

2. The Court of Appeals for the Fifth Circuit also observed that a majority of courts have utilized a standard of strict scrutiny "when examining less restrictive, but somewhat analogous durational requirements." Henderson v. Fort Worth Independent Sch. Dist., 526 F. 2d 286, 292 (5th Cir. 1976), and cases there cited.

3. U. S. Department of Commerce, Bureau of the Census, Series P-25, No. 739, Current Population Reports, table 8, page 55 (1978).

extremely large figure in relation to total population.[4] With this type of movement into a county like Prince George's, and out of Prince George's County into other areas, it is obvious that a requirement of five years' registration in a metropolitan Maryland county, in order to run for a local office, will render a large number of residents ineligible.

With respect to Prince George's County specifically, the 229,448 persons who moved into the County between 1965 and 1970, more than one-third of the County's population, would have been ineligible to run for County Executive under the five year registration provision. The potential impact upon voter choice is clearly substantial. Consequently, under *Bullock v. Carter, supra,* § 405 of the Prince George's County Charter must be judged by the strict scrutiny standard.[5]

Under this strict review standard, it is incumbent upon the appellant Board to show that the five year registration requirement is "reasonably necessary to the accomplishment of legitimate" governmental objectives, *Bullock v. Carter, supra,* 405 U. S. at 144, 146-149, or "necessary to promote a *compelling* governmental interest," *Shapiro v. Thompson,* 394 U. S. 618, 634, 89 S. Ct. 1322, 1331, 22 L.Ed.2d 600 (1969). *See also Wheeler v. State, supra,* 281 Md. at 601; *Henderson v. Fort Worth Independent Sch. Dist., supra,* 526 F. 2d at 292.

The Board, relying on cases upholding durational residency requirements to run for public office, argues that the five year qualified voter provision in § 405 of the Charter

4. U. S. Department of Commerce, Bureau of the Census, Series P-25, No. 701, Current Population Reports, Gross Migration by County: 1965 to 1970, page 58 (1977).

5. It should be emphasized that our application of the strict scrutiny test is in the context of a local office such as County Executive. It may well be that a five year registration requirement would not likely have much impact on voter choice with respect to other types of offices. For example, considering a major statewide office such as Governor or Lieutenant Governor, it may be that normally almost all candidates would have been politically active or held public office previously and would likely have been registered voters in Maryland for five years. Moreover, a requirement that one be a registered voter in the State for five years does not have the same exclusionary impact as a requirement that one be a registered voter of a particular county for five years. We do not here mean to intimate any opinion one way or the other regarding a substantial registration requirement for other offices; we merely wish to make it clear that the application here of a higher standard than the rational basis test is limited to the type of office involved in the instant case.

attempts to ensure that only persons who are "thoroughly informed" and have "a deep seated awareness of the County" will serve as County Executive. Assuming without deciding that this would be a sufficient governmental interest to justify a substantial *residency* requirement, we are here dealing with a durational *registration* requirement. If residency in the County for five years is needed to make a County Executive "aware" of the County, Mr. Goodsell meets this test, as he has been a continuous resident for more than five years. The Board has suggested no relationship between mere registration and "awareness of the County." And we can perceive little additional familiarity a long-time resident of the County would have with local issues simply by being registered to vote.

The Board also claims that the five year registration condition "is a measuring stick of an individual's commitment to Prince George's County" and that it prevents "the proliferation of frivolous candidacies." However, this same asserted interest was not deemed sufficient in *Bullock v. Carter, supra,* to withstand the strict scrutiny test, the Supreme Court there saying: "To say that the filing fee requirement tends to limit the ballot to the more serious candidates is not enough." 405 U. S. at 145. Moreover, we doubt very much that a six year resident of Prince George's County who has been a registered voter for two years is any more likely to be a "frivolous" candidate than a six year resident who has been a registered voter for five years. Regardless, in a democracy, the appropriate judges of which candidates are frivolous, and which candidates have the greater commitment to the County, are the voters on election day.

Finally, even shorter durational registration provisions have been stricken down by the courts. In *Henderson v. Fort Worth Independent Sch. Dist., supra,* the United States Court of Appeals for the Fifth Circuit held that a three year voter registration requirement, in order to seek election to a local school board, violated the Equal Protection Clause of the Fourteenth Amendment. The justification for the requirement was identical to that advanced in the instant

case. In rejecting this, the Fifth Circuit stated (526 F. 2d at 292):

> "The argued justification for section 7 is the state's interest in a ballot composed of knowledgeable and qualified candidates for the increasingly complex job of school board member. However, voter registration for a period of three years is, at best, a crude index of the capabilities of a potential candidate. The background, experience, and political views of the potential candidate are, among others, the indicia of merit and capability. No one contends, or could, that the state is empowered to impose qualifications or requirements in these areas. On the contrary, the power to make necessarily subjective discriminations on the basis of background, experience, or political philosophy rests with the voters of the Fort Worth School District. It can be assumed that opposing candidates will bring deficiencies in any of these areas to the attention of the voters."

The Supreme Court of New Jersey, in *Gangemi v. Rosengard,* 44 N. J. 166, 207 A. 2d 665 (1965), held that a two year voter registration requirement for the office of Mayor of Jersey City, New Jersey, was unconstitutionally discriminatory. In distinguishing a prior decision, *Stothers v. Martini,* 6 N. J. 560, 79 A. 2d 857 (1951), upholding the legislative right to impose "reasonable" qualifications for office, Chief Justice Weintraub for the court pointed to the difference between a *residency* qualification and a *registration* qualification (207 A. 2d at 668):

> "Hence while Stothers would support so much of Chapter 84 as requires two years of residence on the thesis that residence assures a rudimentary understanding of local conditions, it does not bear upon the validity of the further requirement of a two-year period of registration. On the contrary, since the required period of residence would supposedly provide an opportunity to become

familiar with local problems, the further demand for a two-year period of registration becomes the more baffling."

The New Jersey Supreme Court then rejected the same type of rationale for a lengthy durational registration provision which the appellant Board offers in the present case, saying (207 A. 2d at 669):

"The unusual nature of the qualification before us is evident. . . . Age, citizenship and residence are familiar in this area. Presumably they offer evidence respectively of maturity, loyalty, and either an acquaintance with local problems or a stake in their solution. . . . Other qualifications may arise out of the specialized demands of a particular office. It would be reasonable to require a candidate to be a lawyer, physician, or engineer if the duties of the elective office called for such professional skill. But it is another matter to measure qualifications for elective office by the depth of a candidate's interest in or understanding of public matters whether the test be the length of his registration record or some sophisticated quiz. One can quickly see the room for knavery if that proposition were accepted. As we have said, individual fitness is something the voters decide and the intensity of a candidate's interest is part and parcel of that subject. The Legislature cannot take that issue from them."

Finding ourselves largely in agreement with the reasoning of the United States Court of Appeals for the Fifth Circuit in *Henderson* and the Supreme Court of New Jersey in *Gangemi,* we hold that the five year registration requirement for County Executive set forth in the Prince George's County Charter fails to withstand the applicable strict scrutiny standard.[6] It therefore discriminates against those county

6. Two other reported decisions may appear to support a contrary result, although both cases are clearly distinguishable from the one at bar. Hendrix v. State ex rel. Oklahoma State Elec. Bd., 554 P. 2d 770 (Okla. 1976), and State ex rel. Burke v. Campbell, 542 S.W.2d 355 (Mo. Ct. App. 1976). In *Hendrix,* a divided Supreme Court of Oklahoma upheld a six month registration

residents who are registered for a lesser period of time, in violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and the Due Process Clause, Art. 23, of the Maryland Declaration of Rights.[7]

requirement to run for the state legislature. In *Campbell,* a divided intermediate appellate court in Missouri upheld a two year "qualified voter" provision, which included a registration requirement, to be a candidate for the state legislature. However, in *Campbell,* the candidate failed to satisfy the two year *residency* condition as well as the registration directive.

We are aware of no decision upholding, against an equal protection challenge, a durational registration requirement for a local office as long as five years.

7. Although the Maryland Constitution does not contain an express equal protection clause, the Supreme Court has held that the concept of equal protection is embodied in the due process requirement of the United States Constitution, Bolling v. Sharpe, 347 U. S. 497, 74 S. Ct. 693, 98 L. Ed. 884 (1954), and we have long equated Art. 23 of the Maryland Declaration of Rights with the Due Process Clauses of the Federal Constitution, Westchester West No. 2 v. Mont. Co., 276 Md. 448, 465 n. 11, 348 A. 2d 856, 866 (1975), and cases there cited. Moreover, we have regularly proceeded upon the assumption that the principle of equal protection of the laws is included in Art. 23 of the Declaration of Rights. Attorney General v. Johnson, 282 Md. 274, 306 n. 30, 385 A. 2d 57 (1978); Governor v. Exxon Corp., 279 Md. 410, 438 n. 8, 370 A. 2d 1102, 1118 n. 8 (1977), *aff'd,* 437 U. S. 117, 98 S. Ct. 2207, 57 L.Ed.2d 91 (1978); Bruce v. Dir., Chesapeake Bay Aff., 261 Md. 585, 600, 276 A. 2d 200 (1971); Celanese Corporation v. Davis, 186 Md. 463, 471-472, 47 A. 2d 379 (1946).